## NORRIS, executor, *against* BEYEA and others.

Where, after a devise or bequest in language denoting an absolute gift of the whole estate in fee, there is, in a subsequent part of the same will, a limitation over in the event of the first devisee dying under age and without issue, the gifts are not repugnant to each other, but the latter is a valid executory gift.

In such cases, though the subject of the gift be money, the first legatee has only an usufructory interest, while the continuance of his estate remains contingent.

But if the first legatee is authorized to spend the principal for his own purposes, a subsequent limitation, to take effect upon a contingency, would it seems be void on the ground of repugnancy. *Per* DENIO, J.

Executory gifts, limited to take effect upon the prior legatee dying under age and without issue, are not defeated by the death of the prior legatee under *age and without issue in the lifetime of the testator, but such gifts take effect immediately upon the death of the testator, as though there had been no preceding limitation.

\*274]

But it seems that if the first legatee had attained the prescribed age or had issue, and afterwards had died in the testator's lifetime, the future estates would not have taken effect, but the whole provision would lapse. *Per* DENIO, J.

The testator, by will executed in 1844, gave his wife twenty dollars *per annum*, to be paid in equal portions by his four daughters; he bequeathed to each daughter a legacy of a thousand dollars, " to be paid in six months after his decease out of his personal estate;" he then bequeathed the one-half of certain moneys owing to him, to his two sons, and the other half to his four daughters. He bequeathed the remainder of his personal estate to the two sons equally, and in case either should die before he attained the age of twenty-one, and without lawful issue, he gave his personal estate to his surviving sisters in equal shares. In the event that either of the daughters died before attaining the age of twenty-one and without lawful issue, he gave the estate of the daughter so dying to her surviving sisters equally. The testator died in 1844; Catharine, one of the daughters, died during his life, and one of the sons soon after his death, each under age and without issue; Isabella, another of the daughters, married in 1846, and died in December, 1848, under the age of twenty-one and without issue, and her husband was appointed her administrator. On bill filed by the executor of the will to settle its construction; *Held,* 1. That the limitations over of the bequests made by the will directly, were valid; and that on the decease of Isabella, the legacy of $1000 and the portion of the money due the testator bequeathed to her, passed to her two surviving sisters and not to her administrator; 2. That although Catharine died before the testator, the legacies given to

Norris *against* Beyea.

her vested on his decease in her surviving sisters without further limitation over, and that the administrator of Isabella was entitled to her portion of the bequests to Catherine ; 3. That on the death of one of the sons, his share of the personal estate vested in his surviving sisters and was not further limited over ; and that the administrator of Isabella was entitled to her portion thereof ; 4. That as the rights of Isabella in the bequests of her deceased sister and brother vested before the passage of the act of 1848 for the more effectual protection of the property of married women, its provisions did not affect the rights of her husband to the same ; 5. That the two surviving sisters and the administrator of Isabella were bound to pay the annuity to the widow of the testator, in the proportions in which they took and succeeded to the legacies bequeathed to the four daughters by the will.

APPEAL from a judgment of the supreme court, in the second district. The action was brought in that court, to settle the construction of a will.

*Cyrenius Crosby, on the 3d day of October, 1844, [*275 duly made and executed his last will and testament. In the first place, he gave to his wife certain apartments in his dwelling-house, and certain rights in portions of his farm, and an annuity of $20 *per annum* out of the profits of the farm for life. He also gave her $20 *per annum* for life, to be paid by his four daughters, each paying an equal part. He next devised to his two sons, John Increase and Cyrenius, all his real estate, consisting of the farm before mentioned, subject to the reservations in favor of his wife, and another piece of land in fee; and to each of his four daughters before mentioned, he gave a legacy of $1000. The language was the same in the case of each daughter; the bequest to Isabella being in the following words: " I give and bequeath to my daughter, Isabella M. Crosby, and to her heirs, one thousand dollars, to be paid within six months after my decease, out of my personal estate." The next provision is a bequest, as follows: " To my two sons (who are named), equally between them, share and share alike, one-half part of all the moneys which will be coming to my estate after my father's decease, out of his estate, on a certain written instrument from

under his hand and seal, securing to me the reimburse-ment of the costs, &c., by me paid in the chancery suit with the Millikens; the other half of said moneys I give and bequeath to my four daughters aforesaid (who are again named), equally between them, share and share alike." After giving certain chattels to his wife, " in trust for the use of his family," the remainder of the will is as follows · " Item: All the remainder and residue of my estate, both real and personal, I give, devise and bequeath to my said two sons, John Increase Crosby and Cyrenius Crosby, and to their heirs, equally between said sons, share and share alike; and in case either of my said sons ——— shall die before having arrived to the age of twenty-one years, and without lawful heirs, then I give and devise his half part of the real estate aforesaid, or his share of said real estate, to his sur-viving brother, to have and to hold to him and to his *276] heirs forever. The personal estate of him dying as aforesaid I give and bequeath to his surviving sisters, equally between them, share and share alike. And further, in case that both my said sons ——— or in case that either of my four daughters ——— shall die before having attained to the age of twenty-one years, and without lawful heirs, then I give, devise and bequeath all the estate, real and personal, of said sons so dying as aforesaid, and the estate of said daughter or daughters so dying as aforesaid, to their surviv-ing sisters, equally between them, share and share alike, or sister. And if all my four daughters aforesaid should die before having attained to the age of twenty-one years, and without lawful heirs, then I give and bequeath all their estates aforesaid, to their surviving brothers, share and share alike, or brother." The appellant, who was plaintiff in the supreme court, was appointed executor. The testator died on the 29th of December, 1844. Catha-rine W. Crosby, one of the daughters, died before the testa-tor. Cyrenius Crosby, the younger, died on the 1st day of January, 1845, under the age of 21 and without issue;

Norris *against* Beyea.

Isabella M., another of the daughters and legatees, inter-married with Isaac Beyea on the 12th of December, 1846, and died without issue on the 16th day of December, 1848, not having attained the age of 21 years. The widow of the testator married Henry Smith. On the settlement of the accounts of the plaintiff, as executor before the surrogate of Orange county, it was ascertained that there remained in his hands $6641.34, to be paid to the legatees or next of kin, or whoever should be held entitled to it. The plead-ings stated the foregoing facts, and the complaint set forth that hostile claims respecting the distributions were made by the widow and surviving children, and by Beyea, who had been appointed administrator of his deceased wife, and prayed the aid of the court. The defendants were Henry Smith and his wife, the surviving children *of the testator, and Beyea. They all answered the com- [*277 plaint, setting up various and in some respects conflicting claims to the fund. Smith and his wife state that they are advised that the shares in the personal estate of Cyre-nius, the younger, and of Isabella M. Beyea, upon their deaths respectively vested in their surviving sisters, and they stated that they were willing and desirous that the will should receive that construction; but they submitted that if a certain construction, which they maintained, should be established, that then Mrs. Smith, as the mother of Cyre-nius, the younger, would be entitled to participate in his share of the money equally with his surviving sisters. The surviving daughters, Rachel and Arminda, and John In-crease, the surviving son, all of whom were infants, answered by guardian *ad litem*, submitting themselves to the judgment of the court. Beyea, in his answer, claimed the legacy of $1000 bequeathed to his wife, and also the share given to her in the moneys coming from the estate of the father of the testator, and likewise the share of the said wife, as next of kin, in the legacy bequeathed to Catharine.

3 KERN.—18

The action was tried before the Hon. J. W. Brown, one of the judges of the supreme court. He decided that by the death of Cyrenius Crosby, the younger, the two surviving daughters of the testator, Rachel and Arminda, and Beyea, as administrator of Isabella, became and were together entitled to one equal half of the residue of the testator's personal estate, after payment of the debts and legacies, and to one-fourth of the moneys coming from the estate of the testator's father, by force of the limitation in the will, which was to take effect upon the death of either of the testator's sons, under age and without issue; that John Increase was entitled to the remaining half of the residue and to one-fourth of the moneys coming from his grandfather's estate; that the surviving daughters were also entitled each to one other fourth of said moneys coming from the estate of their grandfather, and that each of *them was entitled to the legacy of $1000 bequeathed to them respectively, with interest from the time the same became payable by the terms of the will, and also to the two sums of $1000 each, bequeathed to the deceased daughters, Isabella and Catharine, respectively, with interest; that in case John Increase, Rachel or Arminda, should die under age and without lawful heirs, the share of the one so dying should belong to the surviving daughters or daughter of the testator, except the shares to which the last named children succeeded by the death of Cyrenius, the younger, which it was adjudged was not subject to any further limitation, and that Rachel and Arminda were liable to pay the annuity of $20 *per annum* to their mother in equal proportions. The costs of all the parties were to be paid out of the estate.

*278]

An appeal was taken by Beyea to the general term, and the judgment above mentioned was reversed. It was thereupon adjudged that Rachel and Arminda, and Beyea as administrator of Isabella, were each entitled to a legacy of $1000, with the interest, the latter taking the legacy

Norris *against* Beyea.

bequeathed to his wife; and that each of them was entitled to an equal third of the legacy of $1000 mentioned in the will as bequeathed to Catharine, with interest thereon ; that the said three persons were each entitled to one-third of one-half of the moneys which should arise out of the claim against the estate of the testator's father; that John Increase was entitled to one-fourth of the moneys to arise out of that claim, and likewise to one-half of the residue after paying the debts and legacies; and that Cyrenius, the younger, having died after the death of the testator, possessed of a vested interest in the legacies bequeathed to him by the will, that is to say, of one-fourth of the money due from his grandfather's estate and one-half of the residue of the testator's personal estate, these legacies belong to and are to be distributed among the next of kin of said Cyrenius, the younger, according to the statute of distributions; and finally, that the annuity of $20 *per annum* to Mrs. *Smith was to be paid by the surviving daughters and by Beyea in equal proportions. (*See* 15 *Barb.*, 416.) [*279

From this decree the plaintiff appealed to this court. The case was submitted on printed points.

*J. W. Gott*, for the appellant.

*Fullerton & Fowler*, for the respondent Beyea.

*Reeve & Brewster*, for Smith and wife.

*D. F. Gedney*, for the infant respondents.

DENIO, J.   None of the parties appealed to the general term from the judgment of the special term, except the defendant Beyea; and as all the others have acquiesced in that judgment, it is only necessary upon the appeal of the plaintiff now under consideration, to examine the portions

of the judgment of the general term, in which it is adjudged that a part of the fund in litigation belongs to Beyea, the special term having decided that he was not entitled to any portion of that fund, except a share of the residue and of the moneys which were due from the estate of the testator's father, which came to his wife on the death of Cyrenius Crosby, the younger. Upon the questions thus presented, I have arrived at the following conclusions:

(1.) The judgment of the general term declares that Beyea, as administrator of his deceased wife, is entitled to the legacy bequeathed to her by the will of her father; and it is on the ground that the limitation over to her surviving sisters, in the event which has happened of her dying under age and without issue, is void. In the case of *Paterson* v. *Ellis* (11 *Wend.*, 259), a case upon a testamentary provision somewhat like this, the limitation over was held to be inoperative, on the ground that the primary gift was made in language which, if the subject had been real estate, would *have created an estate tail by the common law. In such cases, where the gift is a legacy of personal estate, the first taker was held to have the whole property, for the reason that personal estate could not be entailed. The language of the will under consideration would not bring the legacies in question within that rule, had there been no change in the law; for the executory limitation is to the surviving sisters of the first named legatees; and that language has been repeatedly held in our courts to be a decisive indication, that the want of issue referred to, was issue living at the time of the death of the tenant of the precedent estate. (*Executors of Moffat* v. *Strong*, 10 *John.*, 12, 16; *Anderson* v. *Jackson*, 16 *id.*, 382.) But the will under consideration in *Paterson* v. *Ellis*, was made before the enactment of the Revised Statutes; while the one with which we are dealing was executed in 1844, and is subject to their provisions. By 1 *R. S.*, 724, § 22, it is enacted that

\*280]

where a remainder is limited to take effect on the death of any person without heirs, or heirs of his body, or without issue, the words "heirs" or "issue" shall be construed to mean heirs or issue living at the death of the person named as ancestor; and by 1 *R. S.*, 773, § 2, it is declared that limitations of future or contingent interests in personal property, except in one particular not material to the present question, shall be subject to the rules prescribed in reference to future estates in lands. The word *heirs* used in connection with the death of the primary legatees in these limitations, must unquestionably be construed to mean issue; for the persons who are to take in default of heirs of those legatees, being their brothers and sisters, and consequently themselves heirs, the word could not have been used in its legal signification, but plainly means children or descendants. The principle has been often decided. (*Goodtitle* v. *Pegden*, 2 *Term. R.*, 720; *Porter* v. *Bradley*, 3 *id.*, 143, *per Lord Kenyon*.) The supreme court was of opinion that the legacies to the daughters of *the testator, being vested legacies, as they clearly were, and being given moreover in the first instance [*281 to the daughters and their heirs, they could not be defeated by the subsequent clause in the will limiting the legacy of each daughter who should die under age and without issue to the surviving daughters. It was considered that the latter clause was repugnant to the first and was consequently void. I am of opinion that the supreme court fell into an error in this respect. The main reliance of the court is upon the case of *Paterson* v. *Ellis*, before referred to, which I think has been misunderstood. In that case the testator directed a large sum of money to be placed at interest in the name of his infant daughter, and part of the income to be expended for her support, and the remainder to be invested. unless she should marry under age, in which event her whole income from that time was to be paid to her. On her arriving at twenty-one years of age

.the whole principal and the accumulations were to be her absolute property; and if she died within that age, leaving issue, the issue were to take the money and accumulations; but if she should die during her minority, and without issue, the whole was to be distributed amorg other parties as directed, respecting the residue of the testator's estate. .The daughter married, but died under age· and without issue. The court for the correction of errors held (reversing the decree of the chancellor) the limitation over to be void and the gift absolute. It is supposed by the supreme court that this decision proceeded upon the ground that .the limitation was repugnant to the gift and that it was held to be inoperative for that reason. In my judgment .it was based rather upon the doctrine that the terms of the gift were such as would have created· an estate tail in lands, that is, that the event upon which the money was given over to others, was the indefinite failure of issue of the daughter; and if this were so, it was conceded on both sides, and was well settled law, that the attempted limitation *was void, for the reason that moneys could not be the subject of a gift in tail. Chief Justice Savage, who delivered the leading opinion, in the first instance, after establishing that the gift of the $20,000 was a valid legacy, referred to some cases, which will be hereafter noticed, showing that repugnant conditions could not be annexed to an estate in fee or an absolute property in personalty, and then proceeded to examine the question whether the ulterior limitation was upon default of issue of the daughter living at her death, or upon an indefinite failure of issue; and at the commencement, he states the question in this form: " The appellant says that this expression, ' without leaving lawful issue,' means an indefinite failure of issue, or in the language of the statute, *de donis*, if her issue fail. The respondents say that the language used means, without lawful issue at the time of her death. If the appellant's construction be the .true one, he should prevail

*282]

and the decree of the court of chancery be reversed; if the respondents are right, they must prevail and the decree be affirmed " (*p.* 280). He then proceeds at very great length and with marked ability to examine the numerous cases upon this once vexed but now obsolete question, and arrives at the conclusion that the limitation over was upon an indefinite failure of issue and was therefore void. From the formal statement of his conclusions at the end of his opinion it may perhaps be inferred that he also thought that the limitation was illegal for the reason alleged by the defendant in this case; but this is not entirely clear upon the language, and it would contradict the expressions which I have quoted. Almost the entire argument is devoted to the discussion of the other point, and to me it seems apparent that it was considered the principal question in the case. Two other opinions were given, one by Senator Edmonds, in which he seems to have been against the limitation for both the reasons suggested; and the other by Senator Edwards, who was for affirming the decree of the *chancellor. The court voted generally upon the question [*283 whether the decree should be reversed, and the decree which was entered declared the limitations over of the fund to be contrary to law and void, without stating the grounds. If, however, it should be assumed that there is nothing in the report to indicate upon which of the reasons referred to the case was decided, it cannot be regarded as a conclusive authority in this case, where only one of them has any application; and it therefore becomes necessary to examine the prior authorities upon which it is insisted that the subsequent limitation was void on the ground of repugnancy.

It is an obvious dictate of reason, as well as a settled principle of law, that all the parts of an instrument are to be taken together in ascertaining its meaning, and that no part of it should be rejected as inoperative if the whole can reasonably stand together. (*Sweet* v. *Chase,* 2 *Comst.,* 73.)

This principle has been carried very far in applying it to the construction of wills, the doctrine being that no part of the instrument is to be abandoned but upon the failure of every attempt to give the whole such a construction as will render every part of it effective. Several striking cases illustrating this position, will be found collected in *Jarman's Treatise on Wills*, 416 *and seq.* Thus, it is held in a case reported in *Cro. Eliz.*, 9, that if a man, in the first instance, devise lands to A. in fee, and in a subsequent clause gives the same lands to B. for life, both parts of the will should stand, and in the construction of law, the devise to B. shall be first, the will being read as if the lands had been devised to B. for life, with remainder to A. in fee. The author referred to says that "sometimes it happens that the testator has, in several parts of his will, given the same lands to different persons in fee. At first sight this seems to be a case of incurable repugnancy, and as such, calling for the application of the rule which sacrifices the prior of two irreconcilable clauses, as the only method of escaping from the conclusion that both are void. Even here, however, a *recon*284] ciling construction has been devised, the rule being in such cases, according to the better opinion that the devisees take concurrently" (*p.* 417). Lord Brougham, in the late case of *Sherratt* v. *Bentley* (2 *My. & K.*, 145), adverting to this rule, remarks that he sees nothing inconsistent in holding that, where the same thing, being a subject capable of division, is given to two different persons, in different parts of the same instrument, they should each take a moiety. I have said thus much to show the anxiety of the courts to reconcile two apparently repugnant clauses in a will. But if, after all reasonable endeavors to preserve both provisions, it be found impossible to do so, the one which occurs latest in the instrument is allowed to govern, rather than that both should fail. (*Sherratt* v. *Bentley, supra; Co. Litt.*, 112, *b.;* 2 *Bl. Com.*, 381; *Constantine* v. *Constantine*, 6 *Ves.*, 182; *Covenhoven* v. *Shuler*, 2 *Paige*, 122, 129; *Smith* v. *Bell* 6 *Pet.*, 68; *Bradstreet* v. *Clarke*, 12 *Wend.*, 665.)

But there is, in truth, no repugnancy in a general bequest or devise to one person, in language which would ordinarily convey the whole estate, and a subsequent provision that upon a contingent event, the estate thus given should be diverted and go over to another person. The latter clause, in such cases, limits and controls the former, and when they are read together it is apparent that the general terms which ordinarily convey the whole property, are to be understood in a qualified and not an absolute sense. No one can look through a treatise upon these subjects without meeting with many cases of that description. (4 *Kent Com.*, 268; 6 *Cruise Dig.*, *tit.* 38, *ch.* 17, § 2 ; *Bac. Ab. Devise*, I ; 1 *Fearne Cont. Rem.* 399.) Chief Justice Savage, in the opinion to which reference has been made, mentions several such cases without seeming to notice that they are hostile to his im-- pression that such provisions are repugnant to each other. For instance, in *Porter* v. *Bradley* (3 *T. R.*, 143), cited by the chief justice, the devise was to P. D., his heirs and assigns, but the testator added, " my will is, that in case my son P. D., *shall happen to die leaving no issue to him, then [*285 over." The devise over was held to be a good execu- tory devise, and Lord Kenyon added, " but if the limitation over had been ' in case he shall die without heirs ' then over, P. D. would have taken an estate tail." *Goodtitle* v. *Pegden* (2 *Term*, 720), also referred to by the chief justice, is another case to the same effect. So familiar is the doctrine, that a limitation may be engrafted upon a devise in fee, that it is that circumstance which forms the distinction between remainders and executory devisees. Where the whole fee is first limited, as in a devise to a man and his heirs, and there is a devise over upon a contingency, this is an execu- tory devise ; but if the first devise was of an estate for life or years, a subsequent limitation to take effect immediately upon the determination of such first estate, would be a remainder (*Fearne on Remainders*, 12). The cases relied on by the counsel for Mr. Beyea, which are those referred to

by Chief Justice Savage, do not present any difficulties to my mind. The first case is one mentioned in 8 *Viner's Abridgment*, 103. The testator devised real and personal estate to his son and his heirs, and says if the son should die leaving no heirs of his body living, then so much as the son should be possessed of at his death he devised over. It was held that as the devisees over were to have no more than the first devisees had left unspent, the limitation was void. *Flanders* v. *Clark* (1 *Ves. Sen.*, 9; *S. C.* 3 *Atk.*, 509), is to this effect: The testatrix gave her son, by her will, 150*l*. and interest till paid, but he should not dispose of it to any wife, but in case of his death without issue the same should revert to the testatrix's family; but in the meantime she directed her executors by half yearly payments to pay the son interest at the rate of five per cent. for such parts of the principal as should from time to time continue in their hands, till the whole should be paid. Lord Hardwicke held, 1. That the particular penning tied up the words to issue living at the time of his death, and therefore if it *had rested there, he would have been of opinion that the son should have had the usufructuary interest only, and it would have gone over on his death without issue; but he added, 2. That the testatrix's intention seemed to be that her executors should have the power of paying the whole, or in part, as the trade, dealings or occasions of the son should require, and that he might spend and dispose of this as he thought proper, and that the case came near to one in *Fitzgibbon's Reports*, 314, of *the Attorney-General in behalf of the Goldsmiths' Company of London* v. *Hall*, where the limitation over was held void because the legatee had the power to spend the whole, and the company could have no more than he should have left unspent. Lord Hardwicke directed the whole to be paid to the son, expressly on the ground that, having by the will the power to spend the money, the limitation over was void. *Butterfield* v. *Butterfield* (1 *Ves. Sen.*, 133), where a limitation over was held to be

Norris *against* Beyea.

void, proceeded wholly upon the ground that the words employed denoted an indefinite failure of issue, and not at all on any idea of repugnancy. In *Bradley* v. *Peixoto* (3 *Ves.*, 324), the legacy was declared to be for the support of the legatee, and the will provided that if he attempted to dispose of it he should forfeit it and it should be divided among his other children. This condition was held to be repugnant to the gift and void. The same principle is decided in *Ross* v. *Ross* (1 *Jac. & Walk*, 154). These are all the cases referred to by the learned chief justice upon this point, and they do not, as it seems to me, tend to establish the poposition that the limitation under consideration was void for repugnancy. In each of them, the fund was expressly, or by necessary implication, to be spent by the primary legatee at his pleasure; and in such cases a further limitation was clearly hostile to the nature and intention of the gift. But there is no such feature in this case, and the fact that the fund was to pass over to others in the event mentioned, shows that while that event remained contingent, *the first legatees were entitled only to the use   [*287 or interest upon it. If I am correct in this, the husband of Isabella was not entitled to the legacy of $1000 bequeathed to her, but it passed to her surviving sisters Rachel and Arminda, upon her death.

The same considerations apply to the portion of the moneys to arise out of the claim upon the estate of the testator's father, which was given to Isabella. It is embraced in the limitation to the surviving sisters, equally with the legacy of $1000, and Mr. Beyea is not entitled to any portion of it.

(2.) Catharine W. Crosby died in the lifetime of the testator, under the age of twenty-one, and without issue. The three other daughters survived her. The legacy bequeathed to her therefore lapsed, and but for the subsequent limitation in favor of the sisters, it would have passed

to the residuary legatees. But that limitation does not fail, because the preceding estate did not take effect. Where a devise is limited, to take effect on a condition annexed to any preceding estate, if that preceding estate should never arise, the remainder over will nevertheless take place, the first estate being considered only as a preceding limitation, and not as a preceding condition, to give effect to the subsequent limitation. (*Fearne on Rem.*, 509 *to* 412.) This principle is exemplified in *Pearsall* v. *Simpson* (15 *Ves.*, 29), in *Avelyn* v. *Ward* (1 *Ves. Sen.*, 419), *Willing* v. *Baine*, (3 *P. Williams*, 113, *and note a*), and in many other cases. In *Carpenter* v. *Heard* (14 *Pick.*, 449), a legacy was given, with an executory limitation over, in terms very much like the present, and the first legatee died in the lifetime of the testator, but after having attained the age of twenty-one. It was held that the limitation over did not take effect; but it is inferable from the case, that if she had died under age, the case would have been otherwise. I am of the opinion, that the legacy went to the surviving sisters and not to the residuary legatees. At the death of Catherine, there *were three sisters surviving, and by the terms of the limitation, they became entitled, when the will took effect by the death of the testator, to her legacy, and also to her portion of the sum to be paid by the estate of her grandfather. Although Isabella took the one-third of Catharine's legacy as a direct gift, and not by way of remainder, I am nevertheless of opinion that the limitation over to her surviving sisters is not applicable to it. This is the view taken of the question by all the parties to this appeal. In the printed points of all the counsel for the respective parties, it is conceded that this third of Catharine's share belongs to Mr. Beyea.

*288]

(3.) Both the judgments of the special and general term declare that one-half of the residue of the testator's personal estate, bequeathed to his two sons, together with one-fourth part of the moneys payable out of the estate of the

testator's father, belong to the two surviving daughters, Rachel and Arminda, and to the defendant, Beyea, in equal portions.    There can be no doubt of the correctness of this portion of the judgment.    The only difficulty suggested in respect to the right of Beyea arises out of the act of 1848, respecting married women. (*Laws*, 1848, 307, § 2.)    I am of opinion that this act does not prejudice the title of the husband to the succession of the estate of his deceased wife, but that its provisions are limited to their respective rights to her property during coverture.    But if this were otherwise, it would not change the title of Beyea, for we held at the last December term, in *Westervelt* v. *Gregg* (2 *Kernan*, 202), that it was not competent for the legislature to take away the right of a husband to a legacy bequeathed to his wife before the passage of the act, and the same reason applies to her distributive share, as next of kin, which accrued to her before the change in the law.    Mrs. Beyea had become entitled to this interest, by the death of Cyrenius, and her husband's right had attached before the legislature interfered, and they could *not be divested by the act.    The annuity of $20 per [*289 annum payable according to the terms of the will by the four daughters, should, in the event which has happened, be paid in the proportion in which the survivors and the husband of Isabella have succeeded to the legacies bequeathed to them.    The two surviving daughters have three-fourths and two-thirds of the other fourth.    The burden must be borne in the same shares.

I express no opinion upon the provisions of the judgment of the special term, respecting the further limitation of the shares of John Increase, Rachel and Arminda.    Beyea, who alone appealed from that judgment, has no interest in that subject.    I am of the opinion that there was no suspension of the absolute ownership of the estate of the testator in this case.    At the death of the testator, and at all times since, there have been parties in being who could unitedly convey an absolute estate in the property.

The result of this opinion is, that the judgment of the general term be reversed, and that the judgment of the special term be affirmed, with the following modifications· (1.) Instead of the portion of said judgment, which declares "that the said Rachel N. Crosby and Arminda H. Crosby are entitled to the two sums of one thousand dollars each, bequeathed to the said Isabella M. Beyea and Catherine W. Crosby, now deceased, by the terms of the will, with interest thereon from the expiration of six months after the decease of the said testator, in equal proportions;" the said judgment is to declare "that the said Rachel and Arminda are entitled, in equal proportions, to the legacy of one thousand dollars, bequeathed by said testator to the said Isabella M. Crosby, with interest thereon from the time the same became payable, by the terms of said will, and that said Rachel and Arminda, and the defendant, Isaac Beyea, the husband and administrator of said Isabella, are entitled to the legacy in the said will bequeathed to the said Catharine W. Crosby, in equal proportions, with interest as aforesaid." *(2.) Instead of the portion of said judgment, *290] providing in what proportions the annuity, payable to the said Phebe Smith, shall be paid, the said judgment is to direct " that said annuity shall be paid by said Rachel and Arminda, and said Beyea, in the proportions in which they are entitled to the said legacies to the said four daughters of the testators, that is to say, the said Beyea shall pay one-third part of one-fourth part thereof, and the said Rachel and Arminda the residue thereof."

MARVIN, J., delivered an opinion in favor of affirmance.

GARDINER, C. J., and JOHNSON, HAND, CRIPPEN and DEAN, JJ., concurred in the opinion of DENIO, J.

Judgment accordingly.