FREDERICK H. FOOTE and Another, as Executors, etc., of WALLACE T. FOOTE, JR., Deceased, Plaintiffs, v. FLORENCE W. PEASLEE, Individually and as Administratrix, c. t. a., etc., of JONATHAN G. WITHERBEE, Deceased, and Others, Defendants.

Third Department, September 19, 1923.

**Wills — construction — devise of entire residue to second wife of testator and his children equally — share of child dying with issue was devised to children of such child — fund to pay annuity to first wife of testator who divorced him was provided by will — executors established annuity fund — provision as to annuity fund stated that it was not intended to change distribution and that on termination fund was to be distributed " among those then living entitled thereto "— entire residue including annuity fund vested on death of testator — only child of testator surviving annuitant not entitled to entire fund — fund should be divided equally among said survivor and estates of other legatees.**

The testator's first wife secured a divorce and the testator by written contract assured her an annuity to secure the payment of which he agreed to deposit securities with a trustee named in the contract. This he had not done at the time of his death. Subsequent to the divorce the testator remarried and thereafter executed the will in question in which he devised all the residue of his estate to his second wife and two children by his first wife and any children that might be born to him by his second wife equally share and share alike, and provided that, in case of the decease of one or more of the legatees leaving a child or children, the share of said child should descend to the child or children of such deceased legatee. The will also provided for an annuity fund in compliance with the testator's contract with his first wife, and in the provision setting up that fund the testator stated that " This provision is not intended to change the distribution of said securities or make any difference between that property and the other portion of my estate hereinbefore disposed of under the general provisions as to the rest, residue and remainder of my Estate, except that no division is to take place until said annuity shall cease and then they are to be divided among those then living entitled thereto, under the provisions of this Will." The testator's second wife, his two children by his first wife and one child by his second wife survived him.

*Held,* that the residuary clause disposed of the entire residue of the estate, including the annuity fund, and that the annuity fund vested at the death of the testator in the residuary legatees in equal shares;

That the provision relating to the annuity fund contains no words of gift and that the words " then living " are not to be construed as providing for a distribution of the annuity fund to the legatees named in the will who survived the annuitant, but that the annuity fund must be divided equally between the sole surviving legatee and the estates of the legatees who predeceased the annuitant.

HASBROUCK, J., dissents, with opinion.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act.

*Charles S. Foote* [*Lewis E. Carr* of counsel], for the plaintiffs and certain defendants.

*Cadwalader, Wickersham & Taft* [*Henry W. Taft* and *Thomas B. Gilchrist* of counsel], for the defendant Florence W. Peaslee.

*Charles D. Miller*, for the defendant Evelyn W. Miller individually.

*Ethelbert I. Low*, for the defendant Evelyn W. Miller, as executrix, etc., of Frank S. Witherbee, deceased.

VAN KIRK, J.:

This matter comes to this court on a stipulated case, for the construction of the will of Jonathan G. Witherbee. He had been divorced in January, 1869, by his wife Charlotte S. By written contract he had assured her an annuity of $8,000, to secure the payment of which he agreed to deposit securities with a trustee named in the contract. This he had not done at the time of his death in 1875. He left a will dated in March 1869, three months after the date of the annuity contract. In 1882 his executors, as instructed in his will, deposited $200,000 par value, United States government bonds, the income from which was to pay the annuity. No interest of Charlotte S. Witherbee is involved here. She survived, however, until 1921.

Jonathan G. Witherbee died leaving him surviving his second wife, Sophie G., whom he married in 1869, their daughter Mary, afterwards Mary Witherbee Foote, and two children of the first marriage, Frank S. and Florence, now Florence W. Peaslee. His estate, except the $200,000 annuity fund, had been distributed share and share alike to these four survivors under the terms of his will, as follows: " I give, devise and bequeath all the rest, residue and remainder of my Estate both real and personal, legal or equitable, and wheresoever situated, equally to the said Sophie, and my children Frank S. Witherbee and my daughter Florence Witherbee, and any children that may be born to me by the said Sophie so that each one shall have an equal share, and so that Sophie and each of our children and my children Frank and Florence shall each have the same amount, and so that in the event that I shall have no child or children by the said Sophie, then the said residue and remainder is to be divided equally between the said Sophie, Frank & Florence or the survivors, in case of the decease of one or more of them before my decease; but in case any of my children shall die, leaving a child or children, the share of said child shall descend to the child or children of such deceased." This clause, with the facts and relationships as they existed when Jonathan G. died, disposed of the entire residuum of his estate including the annuity fund; such residuum vested at his death in his widow Sophie G. and the three children in equal

shares. (*Nelson* v. *Russell*, 135 N. Y. 137; *Connelly* v. *O'Brien*, 166 id. 406.) The whole estate except this annuity fund was paid over in 1892 to the legatees under this construction of the will.

It is claimed, however, by Mrs. Peaslee that while these bonds are a part of the residuum, they are disposed of in a different manner under the provision of the will, which, after speaking of the annuity fund and agreement, provides: " Now it is my wish and will that said securities shall not be divided or distributed until the payment of said annuity shall cease, but they shall be kept by my said Executors undivided until that time and then be divided and distributed by said Executors to the legatees and devisees entitled under the provisions of this Will to the residue and remainder of my Estate as hereinbefore provided. This provision is not intended to change the distribution of said securities or make any difference between that property and the other portion of my Estate hereinbefore disposed of under the general provisions as to the rest, residue and remainder of my Estate, except that no division is to take place until the said annuity shall cease and then they are to be divided among those then living entitled thereto, under the provisions of this Will." We find here no words of gift, but words simply directing a distribution of that which has before been given under the preceding part of the will which disposed of the residue and remainder of testator's estate. We find also two positive injunctions: *First,* that these securities shall be distributed as the remainder of the estate had been distributed; and *second,* to strengthen this, these words shall not be construed to change the distribution of said securities from the distribution that had been made of the residue and remainder. The intention is thus plainly expressed that these securities are not given in any sense as a fund separate from the residue, but are at all times considered a part of the residue. They had not been set apart by the testator during his lifetime and after his death the annuity to Charlotte was paid from the general income of the estate. The residue of the estate was much greater, however, than the amount of these securities; and, in order that there might be a distribution of the bulk of the remainder, the testator authorized the executors to set apart sufficient securities to provide an income for paying the annuity. But the words " then living " are seized upon as a basis for the contention that these securities, in the face of the positive injunction of the testator, must be distributed otherwise than the bulk of the residue had been distributed. First we observe that the exception is simply that no distribution shall be made until the said annuity shall cease. There is no expression here of an intent that the gift is not made until

that event happens. The expression, to be divided among " those then living entitled thereto, under the provisions of this Will," that is, under the clause disposing of the residue, contains no word of gift and the words " those  *  *  *  entitled thereto " mean those who own it, not those who will then take under the residuary clause. These securities could not at that time be distributed to those deceased; they could only be delivered to the living and those then living entitled thereto are the residuary legatees, or, if any be dead, those then living who were entitled to a portion under a deceased residuary legatee. The words directing a distribution of property sometimes have been construed to imply a gift; but never where the gift is otherwise made. To construe this clause of the will as containing a gift as it was made in the residuary clause, but to take effect for the benefit of those living at the time of the death of Charlotte, instead of the death of the testator, seems to us to be making a new will, which the courts may not do. We think force may not fairly be given to the words " then living " which would nullify the earlier expressions in this same clause declaring the testator's positive intention that these securities should go as the residue of his estate had gone; that is, that they were disposed of as a part of the residue. There is no clear, unequivocal expression of intent to cut down or change those positive injunctions. (*Tillman* v. *Ogren,* 227 N. Y. 495, 505.) The law favors such a construction of a will as will avoid the disinheritance of remaindermen who may happen to die before the determination of the precedent estate. (*Connelly* v. *O'Brien, supra.*) The defendant Peaslee takes the position that this clause of the will last quoted gives to her all of these securities, inasmuch as she was the only residuary legatee named in the will living at the time of the death of Charlotte. Should we adopt this construction Mrs. Peaslee alone stands in the way of intestacy as to this fund. Had she died, as had the others in whom, under the earlier provisions of the will, the residue vested at testator's death, this fund would be undisposed of if the court should adopt her construction.

We, therefore, conclude, as above stated, that the title to these securities vested when the title to the residue and remainder of the estate vested, namely, at the death of the testator, and that the distribution of these securities only was deferred. It may be noted that, under the construction contended for by Mrs. Peaslee, Mrs. Miller, the only child of the son, Frank S., would take no part of the fund.

We pass then to the interest of Mrs. Miller. How does she take a share in this annuity fund? She maintains that she can

take an interest under the clause of the will first above quoted, which gives the share of a deceased child to the surviving issue of that child. But this clause does not aid her as to this fund; it simply means that, if her father, Frank S., had died before his father, the testator, Mrs. Miller would have taken her father's share, and in no other manner could she get an interest in the estate through this provision of the will. Her father survived the testator and so she takes no interest in this fund, except because it vested in her father at the time of the testator's death. We think she did so take and is " entitled " to her share of the fund.

If we are correct thus far, it follows that one-half of this fund passes to the estate of Mary Witherbee Foote, the daughter by the second marriage. Both Sophie G. and the daughter Mary survived Jonathan G., and each took one-quarter of the residue of the estate. Sophie G. Witherbee died leaving her estate to her daughter Mary, and Mary died in 1896, leaving her estate to her husband, Wallace T. Foote, Jr. By this course the estate of Wallace T. Foote, Jr., became the owner of and " entitled to," one-half of this annuity fund.

This construction 'is in harmony with other clauses of the will, and gives a consistent meaning to the entire will. The testator did not seek to control the vesting of his property beyond the time of his death. He set aside the securities for the sole purpose of performing his contract with his first wife. By this act he did not take these securities out of the residue and remainder of his estate. Before the securities were set aside this annuity had been paid out of the income of the estate; he did not intend to thus burden the whole residue and withhold all from present enjoyment and so fixed a principal fund to furnish the annuity. When the purpose to which the income of these securities was devoted terminated, the securities were to be delivered to his residuary legatees or those living entitled to the share of a deceased residuary legatee in the proportions named in the residuary clause.

Judgment should be ordered accordingly.

H. T. Kellogg, Acting P. J., and Hinman, J., concur; Hasbrouck, J., dissents, with an opinion.

Hasbrouck, J. (dissenting):

This case comes here under a submission properly made in accordance with section 546 of the Civil Practice Act.

It shows among others the following facts, a knowledge of which is regarded as essential to any determination of the controversy.

Jonathan G. Witherbee was possessed in his day and generation of a very considerable estate. He was twice married. First to

Charlotte Spencer who separated from him on or before the 23d day of July, 1867, and for whose support and maintenance he made provision during such separation. Later and on the 9th day of January, 1869, Charlotte procured an absolute divorce from her husband in the State of Vermont. Subsequently another arrangement was made, that the said Charlotte should have an income of $8,000 a year to be provided by her said husband. He died on the 25th day of August, 1875.

Prior to the making of his will he had contracted to marry one Sophie G. Roe, which after the making of his said will he did.

At the time of his death the family of the testator was composed of the following individuals: Sophie, his second wife; Mary, his daughter by Sophie; Frank S. Witherbee and Florence Peaslee, son and daughter by his first wife, Charlotte Spencer.

To these persons after having made several devises or bequests to others, he devised and bequeathed all the rest, residue and remainder of his estate " to be divided equally between the said Sophie, Frank & Florence or the survivors, in case of the decease of one or more of them before my decease; but in case any of my children shall die, leaving a child or children, the share of said child shall descend to the child or children of such deceased." He provided further with regard to the $200,000 set aside to produce the income of $8,000 per year, that said $200,000 should not be divided or distributed until the payment of the annuity to Charlotte should cease but it should be kept by his said executors undivided until that time and then be divided and distributed by said executors to the legatees and devisees entitled under the will to the residue and remainder of his estate as thereinbefore provided. And he further provided that the provision just stated was not intended to change the distribution of his securities or to make any difference between that property and the other portion of his estate disposed of under the general provisions as to the residue and remainder, " except that no division is to take place until the said annuity shall cease and then they are to be divided among those then living entitled thereto, under the provisions of this Will."

Charlotte Spencer died on the 8th day of August, 1921. Only one of the residuary legatees survived until the payment of the annuity ceased, Florence Peaslee. Frank S. Witherbee predeceased Charlotte too, leaving a child, Evelyn W. Miller. Sophie G. Witherbee died leaving her property by will to her daughter Mary, who married Wallace T. Foote, Jr., and died childless leaving her property by will to him. He also died before Charlotte and by his will he made the plaintiffs his heirs. It is their contention on

the facts submitted that they are entitled to the shares of Sophie G. Witherbee and her daughter, Mary Foote.

There are a few general principles that relate to wills, a reference to which may not be out of place. The court has no power to make a will for a person. Its function is threefold: To declare that a will be established as valid; that it be overthrown for undue influence, fraud, imposition or illegality in its making; or its interpretation if its meaning should be obscure.

There is no question here of illegality in execution, or of duress or fraud. The plaintiffs assert a half ownership in the property in question and base their claim upon a gift of the residuary estate. The will describes the fund set aside to produce the annuity for Charlotte as part of the residuary estate. The other part was divided in 1892 among the four objects of the testator's bounty. The plaintiffs undertake to support their claim by a resort to rules or canons of construction or interpretation. The particular construction sought is that the gift of the residuary estate as originally made was not cut down by any subsequent language used in the will with regard thereto. It is trite in the law that constructions and interpretations have no office where it is possible to discern the purpose of the testator. He set aside the $200,000 in securities to provide an $8,000 income for Charlotte, his first wife. He did not know how long she would live and probably never dreamed she would attain the great age of ninety-two years. He wanted to divide that fund among his four residuary legatees. But he could not divine whether they would all live to the termination of Charlotte's life. If any of them should die during that time it might happen that others than the children of the testator or their children might receive the fund or part thereof. He may not have been willing that some stranger to his preference should participate in the fund and for such reason did he not provide that the fund should be divided among his legatees and devisees living when the annuity should cease?

The character of the estate conferred upon the four residuary legatees in the fund in dispute, was that of a vested remainder defeasible by the condition subsequent of dying during the life of Charlotte. (2 Washb. Real Prop. [6th ed.] § 158 ; *Manice v. Manice,* 43 N. Y. 370; *Matter of Vanderbilt,* 172 id. 69.)

In the quest for the intention of the testator resort may not be had to excision but as a " desperate remedy." On the contrary, heed should be given to all the language used.

The case at bar contains no facts warranting resort to an interpretation based upon the claim of any repugnancy existing in the clause of the will commencing with the word " except." As

said in *Norris* v. *Beyea* (13 N. Y. 284, Denio, J.): " But there is, in truth, no repugnancy in a general bequest or devise to one person, in language which would ordinarily convey the whole estate, and a subsequent provision that upon a contingent event, the estate thus given should be diverted and go over to another person. The latter clause, in such cases, limits and controls the former, and when they are read together it is apparent that the general terms which ordinarily convey the whole property, are to be understood in a qualified and not an absolute sense."

If there were repugnancy among the provisions of the will it is the latest expression of the testator which should govern. Nor do I think the argument sound that the words " those then living " used in the paragraph reading " except that no division is to take place until the said annuity shall cease and then they are to be divided among those then living entitled thereto " refer to those legatees and devisees living at the time of the decease of the testator. (*Stewart* v. *Stewart*, 205 App. Div. 587; *Fowler* v. *Ingersoll*, 127 N. Y. 472.) Did the testator intend that the $200,000 security fund should be divided among those living at his death or living at the death of his first wife Charlotte, the time of the cessation of the annuity? If he intended the time to be as of his own death why did he not use the phraseology used in reference to the distribution of the part of his residuary estate divided in 1892? The words " then living " cannot without literary torture be held to refer to the testator's death. (*Matter of Buechner*, 226 N. Y. 440; *Sears* v. *Russell*, 8 Gray [74 Mass.], 94; *Thomson* v. *Ludington*, 104 id. 194; *Patchen* v. *Patchen*, 121 N. Y. 432; *Schwencke* v. *Haffner*, 18 App. Div. 182; *Connelly* v. *O'Brien*, 40 id. 576, and cases cited.) Such words constitute rather a description of the persons who are to take at the death of Charlotte. (*Sears* v. *Russell*, *supra*.)

The objection that there are no words of gift used in the final clause of the will relating to the residuary fund is not well made. The word " divide " or " distribute " is sufficient, assuming a postponement of the vesting of the estate until the death of Charlotte, to constitute a gift. (*Manice* v. *Manice*, *supra*; *Gilman* v. *Reddington*, 24 N. Y. 9.)

It was the testator's purpose to divide the security fund into as many parts as there were " those then living " at Charlotte's death. We cannot say the fund should be divided in four parts. The testator said something else. The division should be into as many parts as there were those living at the cessation of the payment of the annuity to Charlotte. Where the testator in his will states the number of parts into which the division shall be

made the court cannot change the number. (*Matter of Beuchner, supra.*)

I have been able to understand why the testator in scanning the future should take away the possibility that the annuitant's fund should fall into the hands of strangers at Charlotte's death, but that reason no longer obtains when the claim of the daughter of Frank S. Witherbee is presented for participation in it. She claims to be one of " those then living entitled thereto, under the * * * Will."

The general scheme of the testator's will aside from particular items was first to provide for the conduct of the business of the partnerships in which he was engaged prior to his death; to divide his residuary estate divisible at his death among the four objects of his bounty or if any child should not be living at his death to any child or children of his deceased child, and to divide the remaining part of his residuary estate at the death of Charlotte among such residuary legatees as survived her.

But the language used with reference to such of his children as dying leaving a child or children, was that it or they should share in the residuary estate as the parent if living would have shared. The testator in using such language was using it with regard to the whole of his residuary estate. Not alone that divisible at his death but that also divisible at Charlotte's death. Viewed in such light it is apparent that Evelyn W. Miller comes within the description " those then living entitled thereto, under the * * * Will."

There should be judgment for Florence Peaslee and Evelyn W. Miller.

Judgment directed as per opinion of VAN KIRK, J. Findings to be prepared in accordance with the opinion of VAN KIRK, J. Findings to be submitted Wednesday, September twenty-sixth, at two P. M.

On the 28th day of September, 1923, the decision herein was amended to read as follows:

Adjudged that under the will of Jonathan G. Witherbee the rest, residue and remainder of his estate, including the $200,000 for the annuity, vested at the time of his death in the parties named as residuary legatees surviving him and should be distributed to them or to those to whom it has passed from them.

There should be paid to Edward H. Peaslee and Florence W. Peaslee, as executors of the will of Charlotte S. Witherbee, the sum of $822.22; there should be paid to Florence W. Peaslee, as administratrix with the will annexed of Jonathan G. Witherbee, to

distribute, the bonds and the moneys in her hands constituting the fund which is the subject of controversy here, to and for the parties hereto as follows: One-fourth to Florence W. Peaslee, a residuary legatee; one-fourth to the executors of the last will and testament of Frank S. Witherbee; one-half to the executors of the last will and testament of Wallace T. Foote, Jr.; with disbursements as stipulated.

Opinion by VAN KIRK, J. [*ante,* p. 330]; H. T. KELLOGG, Acting P. J., and HINMAN, J., concur; HASBROUCK, J., dissents, with an opinion [*ante,* p. 333].