MARGARET TAGGART et al., Appellants, *v.* JAMES MURRAY et al., JOHN F. KAVENAGH, Purchaser, Respondents.

Effect is to be given, if possible, to all the provisions of a will, and no clause is to be rejected or interest intended to be given sacrificed on the ground of repugnance, when it is possible to reconcile the provisions supposed to be in conflict.

The will of T., by its first clause, gave to his daughter C. all his property, real and personal, excepting the sums necessary to pay certain legacies, after enumerating which it contained this clause: "All my remaining property  *  *  *  I give, devise and bequeath to my daughter C. for her support and comfort, to be held and controlled by her, and at her death to pass to her heirs, and if she leaves no heirs, to be disposed of by her will," etc. *Held,* that the gift in the first clause was qualified and limited by the residuary clause ; that the will gave to the daughter an estate for life in the lands of which the testator died seized, with remainder to her issue living at her death, and with power in default of

issue to appoint the fee by will, and that therefore a conveyance by C. and her living children did not give an absolute title to such lands, as it was subject to the contingency that children might thereafter be born who would take an interest as purchasers under the will.

(Argued May 13, 1873; decided September 23, 1873.)

A<small>PPEAL</small> from order of the General Term of the City Court of Brooklyn, affirming an order of Special Term denying a motion on the part of plaintiffs to compel John F. Kavenagh to take title and pay the purchase-money of a portion of the premises.

This was an action of partition. That portion of the premises involved in this motion was formerly owned by Francis Titus. He died seized thereof in July, 1836, leaving his last will and testament, which contained the following clauses:

"1st. After all my lawful debts and demands and funeral expenses are paid and satisfied, which I direct to be done in due season by my executors hereinafter named, I do give and bequeath unto my daughter Cornelia all my estate, personal and real, except the following sums or portions, which I wished to be paid by my executors as soon as may be to the several persons following, to wit: To Helina Hoffman, daughter of my late wife Ida, I give and devise the sum of $400; to Elizabeth, daughter of said Helina, I give and devise the sum of $250; to Francis Titus, grandson of my late wife, I give and devise the sum of $200; to my grand nephew, Francis Titus Meserole, I give and devise the sum of $250, and to my grand nephew, Francis Titus Miller, I give and devise the sum of $250. All my remaining property, dwelling-house, lands, outhouses, furniture, moneys, movables, etc., I give, devise and bequeath to my daughter Cornelia, for her support and comfort, to be held and controlled by her, and at her death to pass to her heirs, or, if she leaves no heirs, to be disposed of by her in will to whom and for what purpose she may deem right and proper."

Said Cornelia was the only child and heir-at-law of the testator. At the time of the decease of her father she was a

minor and unmarried. Prior to the year 1848 she married Simon Phelps, and had by him three children, all of whom are living, as is the mother. On the eighth day of March, 1862, she sold and conveyed to Milton Boone the said premises. Her three children subsequently quitclaimed their interests therein, and through various mesne conveyances the title thus acquired became vested in Martin Murray, who died intestate in May, 1871. The parties to this action are his heirs-at-law. A judgment directing the sale of the premises was perfected, in pursuance of which they were sold in December, 1871, and bid off by John F. Kavenagh, who paid ten per cent of the purchase-money, but who subsequently refused to take the title and pay the residue, claiming the title to be defective.

*H. D. Birdsall* for the appellants. Under the first devise of the will Cornelia Titus acquired a fee to the real estate owned by the testator at the time of his death. (*Pond* v. *Berg*, 10 Paige, 140; *Jackson* v. *Babcock*, 12 J. R., 389; *Fox* v. *Phelps*, 17 Wend., 393.) The residuary clause of the will does not modify the title acquired by the devisee under the first devise. (*Areson* v. *Areson*, 3 Den., 458, 461; *Corrigan* v, *Kiernan*, 1 Bradf., 208; *Jackson* v. *Sill*, 11 J. R., 210; *Arcularius* v. *Geisimhainer*, 3 Bradf., 75; *Jenkins* v. *Shaick*, 3 Paige, 244.)

*Geo. L. Fox* for John F. Kavenagh, purchaser. The residuary clause modifies the first clause of the will, and effect should be given if possible to every part. (*Chrystie* v. *Phyfe*, 19 N. Y., 344.)

ANDREWS, J. The gift to the testator's daughter Cornelia of all his real and personal estate by the first clause in the will disconnected with the subsequent provisions, would, by well-settled rules of interpretation, have given her the fee in the land, which would have passed by her subsequent conveyance to Brown. (*Jackson* v. *Babcock*, 12 J. R., 389; *Fox*

v. *Phelps*, 17 Wend., 393; 1 R. S., 748, § 1.) But in the construction of wills, as of other written instruments, the intention is to be ascertained by the consideration of the whole instrument, and the construction is not to be made upon a single or isolated clause detached from its relation to those with which it is associated. If, on a comparison of the different provisions of a will, it is found to contain dispositions which are repugnant to each other, then it is the office of judicial interpretation to preserve, if consistent with the rules of law, the paramount intention of the testator as disclosed by the instrument, although in so doing it may defeat his purpose in some subordinate and less essential particular. It is, however, a primary rule in the construction of wills, that effect is to be given if possible to all its provisions, and no clause is to be rejected, and no interest intended to be given is to be sacrificed on the ground of repugnancy when it is possible to reconcile the provisions which are supposed to be in conflict. In accordance with this rule, it is held that subsequent clauses in a will are not incompatible with or repugnant to prior clauses in the same instrument, where they may take effect as qualifications of the latter without defeating the intention of the testator in making the prior gift. (*Sweet* v. *Chase*, 2 N. Y., 73; 4 Kent, 535, note; *Norris* v. *Beyea*, 13 N. Y., 280; *Tyson* v. *Blake*, 22 id., 559; *Stickles' Appeal*, 29 Penn. St., 234.)

Looking, then, at the whole will, it is found that immediately following the gift in the primary clause of the whole estate to Cornelia is an exception of such "sums or portions" as shall be necessary to pay certain enumerated legacies, and the will then proceeds as follows: " All my remaining property, dwelling-house, lands, outhouses, furniture, movables, etc., I give, devise and bequeath to my daughter Cornelia, for her support and comfort, to be held and controlled by her, and at her death to pass to her heirs, and if she leaves no heirs, to be disposed of by her will to whom and for what purpose she may deem right and proper." It is manifest

that this residuary clause has relation to the same property embraced in the gift to Cornelia by the first clause of the will, and comprehends all the estate of the testator except the part devoted to the payment of legacies. The testator could not have intended a distinct gift to the daughter of a residue when he had previously given her his whole estate. There was no residue to give. There was but one gift to the daughter, and the quality of her estate is to be ascertained by construing the two clauses in connection. They together define and limit the estate devised to her. If the residuary clause is repugnant to the prior gift then perhaps it may be rejected, but if it merely qualifies and limits the force of the general words in the first clause it cannot be disregarded. The two clauses cannot be disconnected for the purpose of upholding the devise in the first clause as a devise of a fee (as is insisted upon by counsel) if they can stand together. Did the daughter take a fee under the will of the testator? If the testator intended that the daughter should take the fee in the land, the residuary clause was unnecessary. She would have taken the fee without it, and the introduction of that clause, if the devise of the fee was intended, obscured the sense, and the words used are by way of limitation, and not by way of amplification of the meaning of the general words. The testator in the residuary clause carefully states the object of the gift to the daughter to be for her "support and comfort," and that the property is to be "held and controlled" by her, and then limits the estate upon her death to "her heirs," and if she leaves no heirs, gives her a limited power of disposition, viz., the power to dispose of the estate by will. In a general view, a testamentary provision for a child is for his support and comfort, and land conveyed or devised to another is held and controlled by the grantee or devisee; but the expressions used by the testator are especially appropriate to the gift of a life estate, and when followed, as they are in this will, by the direction that at the death of the first taker the property shall pass to other persons, indicate very strongly that a life estate only was intended to be given. Nor does

the power of testamentary disposition given to Cornelia indicate an intent to give her a fee. A devise with power of absolute disposition, unless a life estate is expressly limited to the devisee, passes a fee by implication. But the power of disposition given to the daughter of the testator is limited upon the event of her "leaving no heirs," and also to a disposition by will. The estate of the devisee was not thereby enlarged. (*Tomlinson* v. *Dighton*, 1 P. Wms., 149; *Doe* v. *Thorley*, 10 East, 438; *Bradley* v. *Westcott*, 13 Ves., 445; *Jackson* v. *Robbins*, 16 J. R., 587; *Doe* v. *Howland*, 8 Cow., 277; *Terry* v. *Wiggins*, 47 N. Y., 512.)

It may be true that a power given to a *feme sole* to dispose of real estate by will is not inconsistent with a devise to her of the property in fee by the same instrument, as she might through the medium of the power dispose of the estate during coverture by an instrument in the nature of a will, which before recent legislation she could not otherwise do. But the power of disposition given by the testator to his daughter is in harmony with and supplements his general purpose, which was, as the fair construction of the will indicates, to give to the daughter an estate for life, with remainder to her issue living at her death, and with power in default of issue to appoint the fee by will. The testator seems to have contemplated her subsequent marriage, and the fullest power over the estate was given to her, consistent with its preservation for and its devolution upon her issue at her death. The daughter was unmarried at the death of the testator. It was not certain that she would marry, or that marrying there would be issue. The remainder to the issue was in contingency until the birth of the first child, when it vested in such child, subject to open and let in after-born children. (*Plunket* v. *Holmes*, 1 Lev., 11; *Archer's Case*, 1 Coke, 156; *Planner* v. *Scudmore*, 2 Bos. & Pul., 295; 1 Wash., 164.)

In construing the word *heirs* as meaning *issue*, we are guided by what seems to us the manifest intention of the testator. It would be an unusual limitation whereby a testator

should deprive his child of the fee for the benefit of collateral kindred, and especially where, as in this case, the affection of the testator for his daughter is so clearly manifested. The power of sale is to be exercised upon the contingency of the daughter's leaving no heirs. It cannot be supposed that the testator designed that it should be exercised only upon the remote and improbable contingency of the extinction of the heritable blood of the ancestor upon the daughter's death. That words of limitation may be construed as words of purchase, and words of purchase as words of limitation, and that the general meaning of either may be limited when the sense and context require it to effectuate the intent of the testator, is settled by numerous authorities. (2 Jarman on Wills, 76; *Goodtitle* v. *Pegden*, 2 Term, 720; *Rogers* v. *Rogers*, 3 Wend., 522; *Norris* v. *Beyea*, 13 N. Y., 273; *Bundy* v. *Bundy*, 38 id., 410.) The result is that the order appealed from must be affirmed.

The conveyance by Mrs. Phelps, together with the release by her living children, could not pass an absolute fee in the land conveyed. The title was subject to the contingency that children might thereafter be born to her, in which event they would take an interest as purchasers under the will in the land in question, and the happening of the contingency mentioned, although improbable, cannot be said to be impossible. (*Miller* v. *Macomb*, 26 Wend., 228.)

The order should be affirmed, with costs.

All concur.

Order affirmed.