JOHN G. JENKINS, APPELLANT, v. MICHAEL FAHEY, RESPONDENT.

*Real estate of infant — sale thereof — possession by the infant in fact or law — necessary to authorize.*

Under the statute providing for the sale of the interest of an infant in real estate, a sale can only be ordered in those cases in which the infant is in the actual possession of the land, or entitled to the immediate possession thereof.

Expectant estates and estates in remainder cannot be sold thereunder.

APPEAL from a judgment in favor of the defendant, entered upon the report of a referee.

*John M. Stearns,* for the appellant.

*Thomas F. Jackson,* for the respondent

DYKMAN, J.:

The plaintiff in this action made an agreement in writing with the defendant to sell and convey to him two lots of land in the city of Brooklyn, and afterwards tendered him a deed of conveyance for the same in execution of the agreement. This the defendant refused to accept, by reason of certain objections to the title.

This action is now brought for a specific performance of that agreement; it has been tried before a referee who reported in favor of the defendant, and a judgment has been entered upon the report from which an appeal has been taken to this court.

We are thus confronted with the question whether the objections

raised against this title have any foundation in its history, which is as follows: Francis Titus died, in the year 1836, seized of a farm which included these lots, leaving a last will and testament which contained the following provision:

" First after all my lawful debts and demands and funeral expenses are paid and satisfied, which I direct to be done in due season by my executors hereinafter named, I do give and bequeath unto my daughter Cornelia all my estate, personal and real, except the following sums : "

Then after giving some legacies to relatives, the will proceeds as follows: all my remaining property, dwelling house, lands, out-houses, furniture, moneys, moveables, etc., I give, devise and bequeath to my daughter Cornelia for her support and comfort, to be held and controlled by her and at her death, to pass to her heirs or, if she leaves no heirs, to be disposed of by her will to whom and for what purpose she may deem right and proper."

This will received a judicial construction in our highest court, in the case of *Taggart* v. *Murray* (53 N. Y., 233), which was, that the gift in the first clause was qualified and limited by the residuary clause ; that the will gave to the daughter an estate for life in the lands of which the testator died seized, with remainder to her issue living at her death, and with power, in default of issue, to appoint the fee by will, and that therefore, a conveyance by the daughter and her living children, did not give an absolute title to such lands, as it was subject to the contingency that children might thereafter be born, who would take an interest as purchasers under the will.

Before 1848, Cornelia Titus, married Simon Phelps, by whom she had three children, all of whom are now living, but she is dead, and her husband also. In 1847, Cornelia and her husband conveyed these lots to James Waterbury, and subsequently the same title came to William Layton, Lawrence Waterbury and Julia Water-bury. Theirs was an estate for the life of Cornelia.

In 1861, John F. Phelps and Maria Louisa Phelps, two of the children of Cornelia, executed quit-claim deeds of conveyance for these lots with others, to Alvah C. Bush, reciting therein that they were intended to grant all their right, title and interest, conditional, contingent, in remainder or otherwise, in and to the lands of which Francis Titus died seized. In the same year, Ida C. Phelps, the

other child of Cornelia, then an infant under twenty-one years of age, in pursuance of proceedings under the statute for that purpose, conveyed all her interest in the premises to Mr. Bush, the same grantee.

In 1874, William Layton, brought an action for a partition of these and the other lots, in which he made Bush and the Waterburrys defendants. Bush was a non-resident of the State, and an order was obtained in the action, for the service of the summons on him by publication, and he was served personally out of the State, but did not appear in the action. The cause proceeded to judgment, and under it the premises in question were sold to the plaintiff, who received the referee's deed therefor, and then made the agreement with the defendants which has been mentioned.

It results from this statement that Layton and the Waterburrys, took only an estate in the premises for the life of Cornelia, for the very simple reason, that she had no other to give, and she was their only source of title. Whatever, therefore, the plaintiff took from them has passed away with her, and if he got no other title by the sale, then he has none to give to the defendant under his agreement.

It will be well to determine, in the first instance, what Bush took under his deed from the special guardian of Ida C. Phelps, for if he did not become vested with her interest under that conveyance, then, as she was not a party to the partition suit, her interest in the property is still outstanding and then this action must fail.

Our statute under which that proceeding was taken provides, that any infant seized of any real estate or entitled to any term for years in any lands, may, by his next friend or by his guardian, apply to the Supreme Court or a County Court, for the sale or disposition of his property, in the manner hereinafter directed (2 R. S., 194, § 170), and the power of the court to order the sale of the real estate of an infant, is derived entirely from this statute.

There was no original or inherent power in the Court of Chancery to direct the sale of the real estate of an infant, and there is none in this court. (*Rogers* v. *Dill*, 6 Hill, 415.) To authorize the court to direct a sale, the infant must be seized of the property, and this word "seizin" at the common law signifies possession. It is of two kinds. Seizin in deed, which is actual possession of the freehold; and seizin in law, which is a legal right to such possession. Now

at the time of the application to the court for permission to sell her real estate, Ida C. Phelps was not in the actual possession of the land, nor had she the legal right to such possession, and her case could not, therefore, be brought under the statute. This word "seizin" was used designedly by the legislature in this statute for the purpose of preventing such applications in such cases. This statute was only intended to be used in a case where the infant was either in the actual possession of the land or entitled to immediate possession, so that possession could be given to the purchaser at once on the sale being made. If the expectant estates of infants could be sold under the statute, the practice would be liable to very great abuse, and their property would be liable to be sacrificed to the interests of life-tenants, who, in many instances, have them under absolute control. We have no hesitation, therefore, in holding that the interest of this infant was not divested by the sale, under the order of the court, to Bush.

There are other objections to this title which are very serious; but as we think this sufficient to justify the defendant in refusing to accept it and carry out his agreement, the judgment must be affirmed, with costs.

BARNARD, P. J., and GILBERT, J., concurred.

Judgment affirmed, with costs.