GEORGE W. RIGGS AND JOSEPH K. RIGGS, AS EXECUTORS, ETC., OF ELISHA RIGGS, DECEASED, APPELLANTS, *v.* SAMUEL W. CRAGG, AS ADMINISTRATOR, ETC., OF MARY ALICE CRAGG, DECEASED, RESPONDENT.

26   89
154a 196
26h   89
56ad413
26h      89
172 NY³141

GEORGE W. RIGGS AND JOSEPH K. RIGGS, AS TRUSTEES FOR MARY ALICE CRAGG, FORMERLY MARY ALICE RIGGS, UNDER THE LAST WILL OF ELISHA RIGGS, DECEASED, APPELLANTS, *v.* SAMUEL W. CRAGG, AS ADMINISTRATOR, ETC., OF MARY ALICE CRAGG, DECEASED, RESPONDENT.

*Surrogate — when he has power to construe portions of a will — 3 R. S. (6th ed.), 325, sec. 1, sub. 3 — 1867, chap. 782 — When there is an implied gift of the income accruing during the minority of a tenant for life — What moneys received by executors on the sale of assets should be regarded as income — when an executor will be held to have made a purchase for the benefit of the estate — Stock dividends, when they go to the tenant for life, and when to the remainderman — Interest on advances to children — When the court will not interfere with the allowances made by the surrogate to the parties.*

Under the statutes (3 R. S. [6th ed.], 325, § 1, sub. 3; chap. 782 of 1867) conferring upon surrogates power to direct and control the conduct, and settle the accounts of executors, administrators and trustees, he may give a judicial construction to such portions of the will, under which the executors or trustees have acted, as may be necessary to enable him to make a final and complete settlement of the accounts presented.

A testator, after making certain bequests, devised all the rest, residue and remainder of his estate to his six children, in equal portions, except the share of his daughter Mary Alice, which he devised and bequeathed to his executors, in trust for her separate use and benefit during her natural life, to invest and improve the same at their best discretion, and to pay to her from and after her arrival at the age of twenty-one years, or marriage, with the consent of her mother, if living, whichever event might happen first, upon her own separate receipt, the net interest, dividends or other periodical income thereof, and upon her death the capital to go to her issue, or in default of issue, to other persons. The executors were directed to pay her mother, for her maintenance, support and education, during her minority, the sum of $400 until she should attain the age of ten years, and thereafter not exceeding $800 a year.

*Held,* that there was an implied gift to Mary Alice of the income accruing during her minority, on the one-sixth of the estate devised to the executor in trust for her, and that upon her attaining the age of twenty-one years the accumulation

of such income should be paid over to her and not added to the capital of the trust.

Where, at the time of the decease of a testator, large sums of money were owing to him, to secure the payment of which loans he held stocks (notes having been also given for the interest which according to the terms of the loans would accrue upon them) so much of the interest as accrues after the death of the testator (although it is represented by such notes) is properly charged to his executors as income and not as principal.

Where, after the testator's death, the executors sell stock and interest certifi-cates which had been issued thereon, and bonds, and no particular portion of the price is assigned for the accrued interest, it is proper to charge the executors with the interest accruing from the death of the testator to the time of the sale.

Proceedings instituted by the executors against a debtor of the estate resulted in the sale of certain of his real estate, which was purchased by one of the executors and thereafter sold by him at a price greater than the principal of the debt, but less than the amount of the principal and accrued interest.

*Held,* that the executors should be charged with the price, and that the excess over the principal should be considered as income of the estate.

In this State stock dividends created by and declared from the surplus earnings of a company are, as between a tenant for life and those interested in the remainder, treated as income and not as an addition to the capital.

Where, however, the fund from which the stock dividend is declared has been created, not by the earnings of the company, but by a sale of a portion of its real estate, the dividend should be treated as capital and not as income.

The question as to the charging of interest upon advancements made to children, considered.

*Semble,* that when the allowances awarded to the parties by the surrogate, upon the settlement of an executor's account, exceed the limit prescribed by section 3254 of the Code of Civil Procedure, but the accounting has been difficult and intricate, and involved an investigation extending over a period of several years, and the amounts involved are large, the court will not feel bound on appeal to modify the decree in that respect, when no objection thereto has been made by the parties.

APPEALS by the executors, and by the same persons as trustees, from two decrees of the surrogate of the county of New York, made upon the settlement of their accounts as executors, and also as trustees, under the will of Elisha Riggs, deceased. The will con-tained among others the following provisions:

"*Ninth.* — All the rest, residue and remainder of my property and estate, both real and personal, whatsoever and wheresoever and howsoever situated (all and singular my just debts and funeral and testamentary charges being first thereout wholly paid), I hereby

give, devise and bequeath unto my six beloved children, that is to say, George Washington Riggs, Junior,. Lawrason Riggs, Elisha Riggs, Junior, Joseph K. Riggs, William H. Riggs and Mary Alice Riggs, and such other child or children, if any, as may be hereafter born to me, and to their respective heirs, executors, administrators and assigns, in equal portions, or share and share alike, except the said portion or share of my said daughter, Mary Alice Riggs, which I dispose of for her sole and separate use and benefit, whether married or unmarried, as follows, that is to say : I hereby give, devise and bequeath the same to my executors, hereinafter named, in trust for her separate use and benefit during her natural life, to invest and improve the same at their best discretion, and to pay to her from and after her arrival at the age of twenty-one years, or marriage with the consent of her mother, if living, whichever event may first happen, into her own hands, whether married or unmarried, and upon her own separate receipt, to be given from time to time, and not by way of anticipation, under her own hand, which alone shall be a competent discharge therefor, the net interest, dividends or other periodical income thereof, and at her decease I hereby give, devise and bequeath the capital of her said share or portion to her issue or other descendants in equal portions, or share and share alike, agreeably to the statute of distribution, and law of descent of the place where she may be then domiciled, or where the real estate constituting a part of such portion or share may be situated ; and should my said daughter not marry, or marry and have no issue that shall survive her, and should she survive her husband, then upon her decease I hereby give, devise and bequeath her share and portion in my residuary estate, both real and personal, to her surviving brothers and their issue, share and share alike, except that the issue of any deceased brother are to take by representation. But should my said daughter marry, and her husband survive her and she leave no issue or other descendant, then and in that case I hereby give and bequeath to her surviving husband, during the residue of his natural life, an annuity of one thousand dollars, payable annually out of the income of the said share or portion of my said daughter, and the capital of the said share, subject to the said annuity, I hereby give, devise and bequeath unto my other children and the issue of each of them as may then be deceased, in equal portions, or

share and share alike, such issue taking the same share as his, her or their deceased parent would have taken if living, and should I here-after have any further female issue, I hereby give, devise and bequeath her or their share or shares, and dispose of and secure the same in the same way and manner as the said portion or share of, my said daughter, Mary Alice Riggs."

*Austen G. Fox* and *Waldo Hutchins*, for the appellants.

*Duncan Smith*, for the respondent.

DANIELS, J. :

The testator died on the third day of August, 1853, leaving a will and codicil, in which he nominated his widow and four of his sons as his executors. Of these the appellants are the only persons who qualified, and to them letters testamentary were issued by the surrogate. As such qualifying executors they also became trustees of that portion of the testator's estate which was appropriated for the benefit of his infant daughter, Mary Alice Riggs. She was near the age of fourteen years at the time of her father's decease, and intermarried with the respondent in 1869. She died in March, 1870, intestate, leaving no children. After the issuing of letters testamentary to the appellants, they acted as the executors of the estate, and also as trustees of so much of it as was appropriated for the benefit of this daughter. After her decease the respondent, as her surviving husband, was appointed the administrator of her estate, and the proceedings resulting in the decrees from which the appeals have been taken, were instituted by him to obtain a settlement of the accounts of the appellants, both as executors and trustees. For the purpose of properly taking and stating a portion of these accounts, it became necessary that a construction should be placed upon so much of the will of the testator as was relied upon in support of part of the claim made upon this subject by the respondent. He claimed that the income of one-sixth of the testator's estate, devised and bequeathed in trust for the benefit of his daughter Mary Alice, which accrued between the time of the testator's decease and the attainment by her of the age of twenty-one years, became her individual property. The executors and trustees

contested this proposition and insisted that such income, in the absence of any expressed direction concerning its disposition in the will, became a part of the capital of that portion of the estate, and it was accordingly added to it by them. In his determination the surrogate decided that the position taken by the respondent was correct, and accordingly charged the appellants, as trustees of his wife's estate, with income derived from it, from April, 1854, to June, 1860, when this daughter arrived at the age of twenty-one years. This determination of the surrogate has been strenuously resisted for want of jurisdiction, and the point is still relied upon in favor of the appellants.

No express authority is delegated by the statute to the surrogate, conferring upon him the power to construe a will of real and personal estate in a proceeding of this nature, but jurisdiction has in terms been given to him to direct and control the conduct and settle the accounts of executors and administrators. (3 R. S. [6th ed.], 325, § 1, sub. 3.) And like authority has been conferred upon him by chapter 782, Laws 1867, over the accounts of testamentary trustees. Under that act power has been given to him to compel them to render accounts of their proceedings in the same manner as executors were at the time of its enactment required to account. These provisions are, each of them, so broad and comprehensive as to confer jurisdiction upon the surrogate to make a complete and final settlement of the accounts to which they refer. And while they have not provided in terms that the surrogate may construe the provisions of the will under which the executors or testamentary trustees may have derived their title, still that must have been intended to be included when a complete settlement of the accounts could not otherwise be made, for the exercise of such authority is indispensably requisite to the attainment of the object prescribed by the statute. And when that appears to be the case the power which it becomes necessary to exercise for the purpose of securing the end ultimately to be attained is as completely given as though it was specially enumerated in the statute, for it is necessarily to be implied from enactments made in that form. (*Chipman* v. *Montgomery*, 63 N. Y., 221.) The rule upon this subject is that "whenever a power is given by statute everything necessary to make it effectual or requisite to attain the end is implied," and

" where the law requires a thing to be done it authorizes the performance of whatever may be necessary for executing its commands." (Sedg. on Statutory, etc., Law, 92; 1 Kent [7th ed.], 513, marg. p. 464; *Stief* v. *Hart*, 1 Comst., 20, 30.) The case now presented is therefore distinguishable from *Tucker* v. *Tucker* (4 Keyes, 136), and also from *Bevan* v. *Cooper* (72 N. Y., 318), for in neither of them were provisions of this or any similar nature presented for the consideration of the court. And the exercise of jurisdiction of this nature in such proceedings as these has long received the unquestioned sanction of the court of last resort in this State. It must accordingly now be held that the surrogate was vested with the authority to construe this portion of the testator's will, so far as that was necessary to make settlements of the accounts of the appellants as the executors and trustees of this estate.

At the time of the decease of the testator he left him surviving his widow and six children. And after providing for her proper support and directing the payment of his debts and certain legacies, he devised and bequeathed the rest, residue and remainder of his real and personal estate in equal portions to his six children. The one-sixth designed for the benefit of his daughter Mary Alice, he devised and bequeathed to his executors in trust for her separate use and benefit during her natural life, giving to her the net interest, dividends, or other periodical income thereof, and at her decease vesting the capital of this sixth in her issue, in case any should be left by her, and if she should leave no such issue, or other descendants, then her share was given in remainder to her surviving brothers and their issue, share and share alike.

During the minority of this daughter the testator directed his executors to pay to her mother for her support, education and maintenance, the sum of $400 a year until she attained the age of ten years, and after that a sum not exceeding $800 for the like purpose. No clearly express direction was given as to what should be the disposition of the income of this sixth of his estate between the time of his decease and the time when Mary Alice should reach the age of twenty-one years. But it was not necessary that any positive direction should be given for the disposition of this income to render it the duty of the appellants to accumulate it for her during this period of time, for the statute has not prescribed any

particular mode of expression for the purpose of sanctioning or permitting such an accumulation; it has merely provided that the accumulation of rents and profits of real estate and of the interest of money, the produce of stock, or other income, or profits, arising from personal property, may be directed by any will or deed sufficient to pass real estate, or in the case of personal property, by any instrument sufficient in law to pass such property. (2 R. S. [6th ed.], 1103, § 37; id., 1167, § 3.)

And this direction will be as effectually given when it may be clearly implied from the provisions of a will, as it can be when express terms are made use of for the purpose of conveying it. What the statute requires to be regarded is the substance, rather than the form of the provisions which may be made, and they are to be so construed as to carry into effect the intention of the testator himself. (*Taggart* v. *Murray*, 53 N. Y., 233.)

The only qualifications prescribed by the statute are, that the direction shall be contained in the instrument, will, or deed, and that the accumulation shall not extend beyond the period of the minority of the person for whose benefit it is to be made. Subject to the latter qualification, the direction will be valid whenever that may be discovered to have been the intention of the testator, as that has been disclosed by the language of his will. This construction appears to have received the approval of the chancellor in *Craig* v. *Craig* (3 Barb. Ch., 76, 92, 93). But the accumulation in that instance was not allowed, for the reason only that the beneficiary was not a minor.

In *Dillaye* v. *Greenough* (45 N. Y., 438) this principle of construction was considered by the court. In that case the will failed to direct in any form how the rents and profits should be disposed of after they were received. And it was said in the opinion that "in this silence of the instrument, if a trust is to be upheld, it must be for the court to say, from other facts, from circumstances not shown by the instrument or other writing, either that the rents and profits are to be applied to the use of a person, or to be accumulated for some purpose. And then to go further and without definite designation in the instrument itself, or in any other writing, to point out the person for whose use they are to be applied, or the purpose for which they are to be accumulated, and to say in

the last case whether the trust is to commence on the creation of the estate, or at a time subsequent thereto." (Id., 444, 445.)

The case then before the court did not fail because of any impropriety in applying to it a principle of this nature, but for the sole reason that there was not sufficient presented to render the principle applicable. The principle itself has the sanction also of other authorities, extending it so far as to sustain a devise of the testator's property, when that may not have been expressed, if it can be clearly implied from the terms and provisions of his will. (*Brewster* v. *Striker*, 2 Comst., 19; *Post* v. *Hover*, 33 N. Y., 593.)

For that purpose it has been held that "to devise an estate by implication there must be such a strong probability of an intention to give one that the contrary cannot be supposed. Devises by implication are sustainable only upon the principle of carrying into effect the intention of the testator, and unless it appears upon an examination of the whole will that such must have been the intention there is no devise by implication." (Id., 599.)

The circumstance justifying such a construction is the intention of the testator, and that is clearly as applicable to an accumulation of the income of his property, so far as it has been permitted by the statutes of the State, as it is to any devise or bequest which by construction may be held to be within or implied from the terms of his will. For in all instances alike, when that can be legally done, wills are required to be construed so as to carry into effect what may appear to be the intention of the testator. For that reason the principle sustained by these authorities is equally as applicable to a case of this description as those there receiving consideration.

By the will now in controversy the general intention by which the testator appears to have been actuated was to make a complete and entire disposition of his estate. No part of it or of its proceeds or income was designed in any event to be left undisposed of. And the income to be derived from the one-sixth in which the trust was created for the benefit of his daughter Mary Alice, up to the time when she should arrive at the age of twenty-one years, was not given to either one of the other beneficiaries under its provision. They were on the contrary vested with other portions of the estate, and with those only, in such terms as to exclude the income of this trust during this controverted period.

The direction of the testator included all the rest, residue and remainder of his property, and out of that each one of his children was provided with one-sixth, and no more, either directly or through the intervention of this trust. And the amounts which it was provided should be expended for the support, education and maintenance of this daughter during her minority was to be advanced by the executors of the estate, who were to keep a separate account of, and charge the child receiving such advances. In the case of Mary Alice, these advances were clearly not intended to be made from the capital of the one-sixth of the estate vested in the executors as trustees for her benefit. For that was intended by the preceding provisions of the will to be maintained intact by them during the period of her life, and after that to be all passed over to the persons entitled to this interest in remainder. The advances consequently to be made on her account must have been intended to be derived from the income or profits of the estate, and to that extent its direction was a recognition of her right or title to such income or profits. The will further required them to invest and improve the share set apart for her benefit. This direction carries with it the implication that the investment and improvement was designed for her benefit. And that presumption is very decidedly fortified by the circumstances already referred to — that the income from the investments was not given to any other person, but the other children were provided with their shares in the testator's property in such terms as to exclude the idea that they could claim any part of the proceeds of these investments. The will then contained the further direction to the executors that they should "pay to her, from and after her arrival at the age of twenty-one years, or marriage with the consent of her mother, if living, whichever event may first happen, into her own hands, whether married or unmarried, and upon her own separate receipt to be given from time to time, and not by any way of anticipation, under her own hand, which alone shall be a competent discharge therefor, the net interest, dividends or other periodical income thereof." This direction cannot reasonably be so restrained in its application as to apply it only to the interest, dividends or other periodical income accruing after Mary Alice attained the age of twenty-one years. If it should be, nothing whatever would have been payable to her on this account when she became twenty-one

years of age. And if it should not be so construed, then it is equally as reasonable to include within it all the net interest, dividends or other periodical income which accrued from her share during the entire period of her minority. That she should have something from this source was the clearly expressed intention of the testator in giving this direction, and if she should have anything, no reason is disclosed by the terms made use of for giving her less than the entire income of her share as it might have accrued during her minority. It has been urged that the term "other periodical income thereof" was intended to restrict her right to what might accrue within the limits of some fixed designated period, as that of a year or less than a year. But these terms, in the connection in which they have been used, neither require nor would they justify such a construction. They are rendered much more intelligible in applying them to the different periods of time which might appropriately be included within the term of the minority of this beneficiary, than by making any more restricted use of them. And the preceding phrase "the net interest," unqualified as it was used by the testator, can be harmonized with no other construction than that including all the interest arising out of the investment of this share of the testator's estate. To construe the direction otherwise than as including the full amount realized from the investments required to be made, would render the conclusion inevitable that the testator had died intestate as to this portion of the estate, and that it was clearly not his purpose to do, for the intention is unmistakably evinced to effectually dispose of all his property by means of this will and the codicil afterward executed. The construction which it has been already intimated this particular direction should receive harmonizes with that general intent. And even if it is to be regarded as ambiguous in its meaning, it should still be so construed as to carry this general design of the testator into effect. That was the construction given to this portion of the will by the surrogate, and in this conclusion this court has ample reason for agreeing with him.

At the time of the decease of the testator large amounts of money were owing to him which he had loaned to other persons. These loans were secured by stock held by him; and notes had also been taken by him for the interest which, according to the terms of the

loans, should accrue upon them. For so much of this interest as accrued after the decease of the testator the executors were charged in their accounts by the surrogate. This charge has been resisted as an improper one upon the ground that the notes for the interest constituted a part of the capital of the testator's estate. It is plain that such would not have been their effect if the promises for the payment of the interest had been included in the formal obligations taken for the return of the principal, for interest in the adjustment of accounts of this nature is properly considered as accruing proportionally from day to day, and such in fact is the manner of its accumulation. For that reason it has been made apportionable in accountings of this description. (*Clapp* v. *Astor*, 2 Edw. Ch., 379–383, 384; 2 Perry on Trusts [2d ed.], § 556.) And whether the interest is made to accrue by the terms of the obligation taken for the loan of the principal, or by the terms of another and separate instrument, can really constitute no difference in the application of this principle. The fund to accrue is still the same whether the promise for its payment be made in one form or the other. It is no more nor less than interest in either case, and so far as it has not accrued, but is prospective in its nature, it is still interest to be earned, and as such it is the income derived from the principal on account of which it may have been reserved. To the extent of one-sixth of the interest accruing in this manner during the minority of this daughter she was clearly entitled under the terms of the testator's will. It was part of the income or interest derivable from the estate which the law in favor of such a claimant requires to be computed from the decease of the testator. (*Van Blascom* v. *Dager*, 31 N. J. Eq., 783; *Weld* v. *Putnam*, 70 Me., 209.) This principle includes all interest accruing to the estate after the decease of the testator, and it is distinguishable from dividends upon stocks forming a part of such an estate, for as the time within which they may accrue cannot so certainly be ascertained they are regarded as wholly coming into existence at the time when they may be declared, and for that reason incapable of apportionment between a life tenant and a remainderman. (*Scholefield* v. *Redfern*, 2 Drury & S., 173.) For that reason the authorities by which this rule has been made applicable to dividends can have no bearing

whatever upon the disposition which should be made of accruing installments of interest.

The testator was the owner of twenty-seven shares of the New York and Liverpool Steamship Company of $2,000 each. Upon these shares interest certificates had been issued by the company and the executors sold both the shares themselves and the interest certificates for the sum of $75,401. In the accounting one-sixth of this interest was allowed in favor of the estate of Mary Alice so far as it accrued after the decease of the testator. In the sale which was made no particularly assignable amount of the price was stipulated for the interest certificates, but it is fairly presumable that they were included at such a valuation as justified the conclusion that the interest had in that manner actually been realized by the appellants. If that had not been the fact it was one which they might very easily have proved. In the absence of such proof the presumption would be against them, and with the evidence given upon this subject would be sufficient to justify the allowance made upon this part of the account.

During their administration bonds were from time to time sold by them upon which interest was charged in the accounting substantially upon the same principle. The sales were made in a similar manner without any designated part of the purchase-price being assigned on account of interest. It was to be presumed, however, that the interest so far as it had accrued formed a part of the value given to the securities in their sale, and to the extent that it had accrued and was allowed in the accounts, the determination seems to have been warranted under the legal principles already mentioned.

The executors held a demand amounting to the sum of $15,000 against a debtor residing in Cincinnati. Legal proceedings were instituted for its recovery, which resulted in the sale of real estate purchased by George W. Riggs, one of the executors. This was held for some time in this manner, and then it was sold upon terms producing $12,559.01 more than the principal of the indebtedness. At that time the interest which had accrued was greater than this excess, and it was accordingly allowed in the accounting as income of the estate.

By the purchase which was made of this property by one of the

executors, as the consideration for it was a debt due to the estate, the title to it was subjected to the same obligations as those which previously affected the indebtedness itself. Neither of the executors could purchase the property divested of the obligation previously created to account for it in the settlement of the estate, for persons sustaining such a relation of trust and confidence as these appellants surely did, are disabled from dealing with the trust property for their own exclusive use or benefit. (*Colburn* v. *Morton*, 36 How., 150, 160; *Fulton* v. *Whitney*, 5 Hun, 16.)

In the hands of these executors the property consequently remained applicable to the principal, also to the interest of this indebtedness. And when it was finally sold and the proceeds received for it, it became the executors' duty to divide and appropriate those proceeds first to the payment of the principal, and then to the interest arising upon the indebtedness. That was the disposition which was made by the decrees, and it must be held to have been well sustained both by principle and authority.

The testator was the owner of fourteen shares of $1,000 each in the Atlantic White Lead Company. These were sold by the executors previous to the accruing of a current dividend, but the sale was made under the terms that this dividend should actually be received by them. They retained the right to it by force of a positive stipulation securing it, and in performance of this obligation the sum of $1,361.35 was paid to them. That sum consequently was received substantially in the same manner that it would have been if they had continued to hold and own the stock until it actually became payable. Their obligation to account for it therefore was not obnoxious to the rule that dividends are not to be apportioned, for they received the entire amount as it would become payable, less the interest for the intervening period of time. The party to whom the stock was transferred was conversant with the affairs of the company and knew what the dividend was to be. And he paid that amount over after deducting from it the interest upon the money for the intervening period. This was therefore a dividend actually received by the executors constituting a part of the income of the estate. They were accordingly liable to account for it as such, and were charged with only that proportion appertaining to this trust estate.

The testator was the owner of stock in the New York Gas-Light Company, and this company on the 20th day of October, 1862, declared a stock dividend of fifty dollars a share to be divided among the owners of the stock of the corporation. Under the resolution adopted for that purpose thirty-three of these shares was delivered. to these executors. They added them to the capital of the estate, and received dividends upon them until 1870, when the shares themselves were exchanged for sixty-six shares of the stock of the corporation, and these shares were also held by the executors as part of the capital of the estate. Dividends were afterwards paid to them upon such shares, and accounted for by them in their administration of the estate. In the determination which was made by the surrogate these shares were regarded and applied as part of the income of the estate itself. And as a consequence of that determination a corresponding addition was made to the income of the trust created for the benefit of the testator's daughter Mary Alice. Under the resolution which was adopted it was stated that the funds of the company had been accumulating for twenty years past, and that a special dividend of fifty dollars a share should be declared payable on and after the 1st of November, 1862. And by the succeeding portion of the resolution this payment was to be made in the shape of a stock dividend. When this accumulated fund was acquired, was not otherwise made to appear than by the statement of it contained in the resolution. An investigation was instituted for the purpose of ascertaining the fact, but no evidence could be obtained by means of it which warranted the conclusion that any assignable proportion of it had been earned before the death of the testator. But if evidence of that nature had been given it could not very well have produced any change in the determination, for the reason already stated, that dividends are not apportionable, but are legally considered as accruing only from the time when they may be declared. This dividend was declared nine years after the estate had passed into the hands of the executors. And if it is to be considered as a dividend under the terms made use of by the testator in his will, the executors were properly required to account for it as a part of the income of the estate. By the rule prevailing in England, and which has been followed in the adjudications made upon the same subject in the State of

Massachusetts, dividends made by the way of issuing additional shares of stock, are considered simply as augmentations of the capital of the company, and for that reason forming no part of the income of the estate receiving such stock, as between the life tenant and the remainderman, while dividends in money of an equal amount would be regarded as part of the income of the estate. But in this and other States a different view of the effect of such a transaction has been adopted. When the stock is created, as this was, wholly by the surplus earnings of the company, it is considered practically the same in its effect as the payment of the money itself, and then it has restoration to the company as a consideration for the issuing of the stock. In that view the stock becomes the simple equivalent of the surplus earnings of the company liable to be appropriately disposed of as a dividend upon its capital.

This subject was carefully considered in the case of *Clarkson* v. *Clarkson* (18 Barb., 646), and the conclusion was there reached that stock dividends of this nature could not properly be distinguishable from a division of the surplus earnings of the company among the stockholders in money, and for that reason properly constituting a part of the income of the estate. The same view was followed in *Simpson* v. *Moore* (30 Barb., 637), and in the *Estate of Woodruff* (1 Tucker, 58). A late English adjudication upon this subject received the attention of the court in *Hyatt* v. *Allen* (56 N. Y., 553), and the occasion was made use of as as a proper one for disclaiming any intention on the part of the court to approve of the rule prevailing in England upon this subject.

The same point was examined in *Earp's appeal* (28 Penn., 368), and the true rule to be adopted was considered to be that which had received the approbation of the Supreme Court of this State. A further examination of the same point arose in *Wiltbank's appeal* (64 Penn., 256), and it was disposed of in the same manner.

It was also examined in *Van Doren* v. *Olden* (19 N. J. Eq., 176), and in *Lord* v. *Brooks* (52 N. H., 72), and the determinations then made were adverse to the rule prevailing in England and in the State of Massachusetts. The weight of authority appears therefore to be decidedly with the determination made by the surrogate

upon this subject, and that is to regard stock dividends, made in the manner in which these were declared, as simply another mode for the distribution of the surplus earnings of the company among its stockholders, instead of actually paying the money itself to them. As the term dividend is ordinarily employed and understood it may properly include dividends of this character, and they must therefore be held to have been within the contemplation of the testator at the time when he made the declaration of trust in his will in favor of his daughter; for that reason the income of her estate was entitled to be benefited, as it has been by the accounting, by reason of the making of these stock dividends.

Other dividends of a similar character, though not particularly brought in question by the points made, were declared upon other stocks owned by the estate. They, of course, are included in what has already been said concerning the stock dividends of the gas company, and nothing further need be added for the purpose of disposing of this portion of the case.

Objections were taken to the admissibility of entries upon corporate books, which were pertinent to the investigations required to be made for the completion of the accounting, and upon them the position is taken that the evidence was improperly received in the proceedings. But that precise objection was not presented when the evidence was offered, it was objected to only upon the ground that it was immaterial and irrelevant. These objections were not well founded for the evidence itself was both material and relevant, and the objections can consequently be of no service to the appellants. The appellants cannot be relieved from the payment of interest at the rate of seven per cent by reason of anything contained in chapter 538 of the Laws of 1879, for while these transactions were under their management the legal rate of interest was that of seven per cent, and it may be presumed, in the absence of proof showing their inability to obtain that rate, that the investments of the estate realized that amount. What they were required to account for was the sums which they had secured in the management of the property committed to their care; and that may well be presumed, under the circumstances appearing, to have produced the rate of interest allowed by the surrogate.

In the decrees which were made, allowances were provided for the

counsel of the respective contestants. These allowances exceed the amount mentioned in section 309 of the Code of Procedure, as it was amended by chapter 431, section 11 of the Laws of 1876, and now contained in section 3254 of the Code of Civil Procedure. That limit has been considered a proper one to be observed by the surrogate in the exercise of a well regulated discretion, even though it may not in terms have been made positively obligatory upon him. (*Down* v. *McGourkey*, 15 Hun, 444; *Hurd* v. *Warren*, 16 id., 622.) But as these accountings were difficult and intricate and involved investigations extending over a period of several years, and the amounts themselves in controversy were large and the objection taken to the allowance has not been insisted upon as a reason for modifying so much of the decrees as relate to them, they may not improperly be left as the surrogate himself has placed them.

It appeared that the testator made large advances during his lifetime to his sons upon which interest was claimed by the administrator of the estate of the daughter Mary Alice. This interest, as it was computed, amounted to the sum of $20,959.18, but in the charges upon the testator's books against the persons receiving these advances no additions of interest were made. Neither was there anything contained in them indicating his purpose to be that they should be charged with interest. By the terms of his will he directed a division of his estate to be made when his son Joseph should attain the age of twenty-three years, and that in making such division each child should be charged with all such charges as might stand against him or her on the books of the testator, and without any interest thereon down to the period fixed for making the division of the estate. This direction was prevented from taking effect by the circumstances that the testator's son Joseph attained the age of twenty-three years before the time of his own decease. The division of the estate, consequently, could not take place as he himself provided for the event. No direction was given authorizing the addition of interest to these advances, before the time when the estate itself would be capable of being divided; and the direction which was given upon this subject appears to have been based upon the intention that interest should not be charged until after the arrival of the time when the estate itself could be divided. This

was a reasonable and proper direction, and it was probably intended to have the effect of protecting these advances against charges of interest down to the time when the division of the property ought actually to take place, and as there was no unreasonable delay in making that division, no ground for charges of interest upon these advances was established. The exclusion of this claim of interest was required by the circumstances appearing in the case, as well as the legal rule applicable to this subject. (*Osgood* v. *Breed's Heirs,* 17 Mass., 356.)

Interest was also claimed upon advances made by the executors to the other children of the testator previous to the expiration of one year from the time when the will was proven. This interest amounted to upward of $6,000. But no good reason appears for charging it against the executors. While they were not bound to make the advances within the time when that was done, they certainly were not prohibited from doing so; and if in the judicious and careful management of the estate they deemed that to be proper, no good reason appears to justify charging them with interest upon the advances, because they deemed it prudent to exercise this authority.

A stock dividend of five per cent was declared by the New York Gas-Light Company, in October, 1853, which was received by the executors. But it appeared by the evidence that the fund out of which this dividend was made formed no part of the earnings of the company, but it was realized by a sale of its real estate on Canal, Centre and Hester streets, in the city of New York. This dividend accordingly was not governed by the legal principle indicating the appropriation proper to be made of stock dividends declared out of surplus earnings; for it was really made from the proceeds of property constituting a part of the capital of the corporation, and which the directors considered themselves justified in declaring in the then financial condition of the corporation. It was not appropriately income received by the estate, but it was in the nature, so far as it extended, of a change in its capital. It was properly, therefore, so regarded by the executors, and it could not be carried into the accounts as the income of the estate. No other objections requiring further consideration have been taken to the decrees forming the subjects of these appeals, and as those

which have been considered cannot be sustained, it follows that the decrees themselves should be affirmed.

DAVIS, P. J., and BRADY, J., concurred.

Decrees affirmed.