In the Matter of the Final Judicial Settlement of the Account of Proceedings of WORTHINGTON FROTHINGHAM and Another, as Executors of JAMES McCLURE, Deceased.

*Will — what words cut down a fee to a life estate — all clauses to be given effect— provisions inconsistent with absolute ownership.*

A testator made a will which contained, among other provisions, the following.

"*First.* After all my lawful debts are paid and discharged, I give and bequeath unto my beloved wife, Mary I. McClure, all my real estate owned by me of every name and description; also all my personal property of every kind and nature; also my life insurance, stocks and mortgages, to have and to hold, with full power to collect all rents and income from the same, she to keep in repair and pay all taxes and insurance on the same, with full power to sell any or all such real estate, with the consent of my executors, should it be thought best for the estate; should she marry again, then her right of dower only in my estate.

"I recommend she appoint a good agent to take charge of my real estate. I also give her discretionary power to give such sums of money to any, as she may think prudent, of my relatives."

The testator appointed his wife and another person executors of the will. In a proceeding taken to settle the accounts of the executors:

*Held*, that the widow took only a life estate in the personal property, with a power of sale as to the real estate, subject to the consent of her co-executor, and a limited right to dispose of the personal property in accordance with the last clause of the will.

That effect should be given, if possible, to all the provisions of the will, and none should be rejected because of repugnancy where it was possible to reconcile the clauses which were supposed to conflict.

That where the provisions of a will operated upon personal and real property alike, the court might, in determining the proper disposition of the personalty, look also at those provisions which concerned the real estate.

That the authority to collect rents was, while not inconsistent with an estate in fee, entirely consistent with the beneficial enjoyment of the estate by a life tenant

That the provision requiring the payment of taxes was consistent with a life estate, but not with a grant of the fee.

That the provision requiring the consent of her co-executor to a sale of the real estate was a restraint upon alienation which indicated that it was not intended that the widow should take a fee.

That the clause which prevented the widow from giving money to persons other than the testator's relatives was also a prohibition inconsistent with absolute ownership.

APPEAL by Edward McClure, Charles McClure, Mary F. McClure, Jennie McClure and James McClure, heirs-at-law and next of kin of James McClure, deceased, by Francis H. Woods, their special guardian, and by Francis H. Woods, as such special guardian, from a decree, entered in the office of the surrogate of the county of Albany on the 30th day of October, 1891, among other things, ordering the executors of James McClure, deceased, to transfer to his widow all his remaining personal property then in their hands, with notice of an intention to bring up for review upon such appeal the decision of the surrogate of Albany county upon which the said decree was entered.

*Francis H. Woods*, for the appellants.

*George H. Stevens*, for Mary J. McClure, as executrix, etc., respondent.

MAYHAM, P. J.:

The testator made the will in question on the 9th day of November, 1888, and died on the 11th of October, 1889, at the age of seventy-five years, leaving him surviving his widow, the respondent

on this appeal, and three children of full age, and five grandchildren, who were the children of two deceased sons of testator, all of whom are infants, and the appellants on this appeal.

The deceased left real estate valued at about ninety-six thousand dollars, and personal property valued at about sixty-eight thousand dollars.

The will was drawn by the testator in his own handwriting, and in it he nominated and appointed his wife as executrix, and W. Frothingham as executor, both of whom qualified and entered upon their duties as such at the time the will was admitted to probate. No mention is made in the will of the children or grandchildren of the testator, and the sole beneficiary named therein is the wife of the testator.

On the application of the executors for a final judicial settlement before the surrogate, the appellants filed an answer to their petition alleging that the true interpretation and legal effect of the will of James McClure are doubtful, in that it does not clearly appear from said will whether the testator intended thereby that his widow should take a life estate in the personal property therein disposed of, or whether he intended thereby that she should take the property absolutely.

Upon the issue thus made the question was litigated before the surrogate, who, among other things, adjudged and determined that, under the will, the title to all the personal property of which the testator died seized and possessed was vested in and belonged to his widow absolutely, and decreed that it be transferred to her after deducting therefrom the legal expenses of the executor and executrix, and the expense of the accounting.

From this determination and decree of the surrogate the appellants appeal. On the part of the appellants it is insisted that the whole will, taken together and read and construed in the light of surrounding circumstances, clearly establishes the intention of the testator to give to his widow only a life estate in both his real and personal property.

On the part of the respondent it is contended that, by the clear and unequivocal language of the will, the testator devised and bequeathed all of his estate, real and personal, to his widow absolutely.

The main and only question raised on this appeal is as to the true intent and meaning of the testator in and by his will. Did he give only a life estate to his widow, and die intestate as to the remainder after her death or her marriage, or did he devise and bequeath all of his estate, real and personal, to his widow in fee and absolutely?

The provisions of the will over which the controversy arises are as follows :

"*First.* After all my lawful debts are paid and discharged, I give and bequeath unto my beloved wife, Mary I. McClure, all my real estate owned by me of every name and description, also all my personal property of every kind and nature, also my life insurance, stocks and mortgages, to have and to hold, with full power to collect all rents and income from the same, she to keep in repair and pay all taxes and insurance on the same, with full power to sell any or all such real estate, with the consent of my executor, should it be thought best for the estate ; should she marry again, then her right of dower only in my estate.

" I recommend she appoint a good agent to take charge of my real estate. I also give her discretionary power to give such sums of money to any, as she may think prudent, of my relatives."

It is a cardinal principle in the construction of wills that the intention of the testator must control if ascertainable from the will itself, when the language of the will is clear and free from ambiguity or repugnance ; but if not free from ambiguity or repugnance, effect is to be given, if possible, to all of its provisions, and no claim is to be rejected or interest, intended to be given, sacrificed on the ground of repugnance when it is possible to reconcile the provisions which seem to be in conflict.

Tested by this rule, it becomes necessary to inquire whether there is anything in this will which is inconsistent with the theory of an absolute devise and bequest of all of this property, real and personal, to the respondent.

One of the essential qualities of an absolute devise and bequest is the complete and absolute power of voluntary disposition of the property so devised and bequeathed by the devisee and legatee ; but if the devise or bequest is absolute, so as to convey the absolute

title to the devisee or legatee, and a condition is annexed in restraint of alienation, the condition is sometimes held repugnant to the grant, and void. In this case it seems to be conceded by the appellants that the language employed by the testator at the commencement of his will would, if not qualified or restricted by the subsequent provisions, vest in the respondent the absolute title to the entire estate.

The language as to which this concession is made is as follows: "I give and bequeath to my beloved wife, Mary I. McClure, all my real estate, owned by me of every name and description, also all my personal property of every kind and nature, also my life insurance, stocks and mortgages."

But it is insisted that this language and its effects are qualified by the provisions which follow, and that such qualifying language explains the meaning of the preceding part of the instrument and is not repugnant to it; and, when read as a whole and construed in reference to the circumstances of the testator and the natural objects of his bounty, proves that his intention was to vest in the widow only a life estate. It is quite apparent from the provisions of this will that the testator intended its provisions to operate alike on his real and personal estate; and in determining whether the bequest of the personal estate was absolute, we may look at all the provisions of the will relating to both the real and personal property.

Looking at the will as a whole, we are to endeavor to so construe it as to give effect to all of its provisions. In *Taggart et al.* v. *Murray et al.* (53 N. Y., 236) ANDREWS, J., lays down this general rule: "But in the construction of wills, as of other written instruments, the intention is to be ascertained by the consideration of the whole instrument, and the construction is not to be made upon a single or isolated clause detached from its relation to those with which it is associated. If, on a comparison of the different provisions of a will, it is found to contain dispositions which are repugnant to each other, then it is the office of judicial interpretation to preserve, if consistent with the rules of law, the paramount intention of the testator as disclosed by the instrument, although in so doing it may defeat his purpose in some subordinate and less essential particular.

"It is, however, a primary rule in the construction of wills that effect is to be given, if possible, to all its provisions, and no clause is to be rejected and no interest intended to be given is to be sacrificed on the ground of repugnancy when it is possible to reconcile the provisions which are supposed to be in conflict. In accordance with this rule, it is held, that subsequent clauses in a will are not incompatible with, or repugnant to, prior clauses in the same instrument, where they may take effect as qualifications of the latter without defeating the intention of the testator."

In *Norris* v. *Beyea* (13 N. Y., 284) DENIO, J., says : "But there is, in truth, no repugnancy in a general bequest or devise to one person, in language which would ordinarily convey the whole estate, and a subsequent provision that upon a contingent event the estate thus given should be diverted or go over to another person. The latter clause in such cases limits and controls the former, and when they are read together it is apparent that the general terms, which ordinarily convey the whole property, are to be understood in a qualified and not an absolute sense."

But in the cases cited, and others of a similiar character which might be cited, the testators of the wills disposed of the property to some other legatee or devisee after the happening or failure of the contingency upon which the right of the first takers depended.

In the case at bar, if it be held that the respondent takes only a life estate under this will, then, as to the remainder, the testator died intestate.

While it is true that, where a testator makes a will assuming to dispose of his property, the law does not favor intestacy, and the presumption is that he intended to dispose of all of his property, yet that presumption may be overcome and does not prevail where, by the terms of the will, it is apparent that the testator intended that his estate should ultimately be disposed of under the laws of distribution and descent.

In this case it seems that the testator by his will imposed conditions upon his property, and its future occupancy and control by his widow, inconsistent with an absolute estate in her, and entirely in harmony with the estate for life.

The express authority to collect rents given in the will, while it is not inconsistent with an estate in fee, was wholly unnecessary, if the testa-

tor intended by his will to vest in his widow the title in fee, but is entirely consistent with the beneficial enjoyment by the life tenant.

Again, the direction in the will that testator's widow shall keep in repair and pay the taxes and insurance on the property is imposing an obligation on her inconsistent with the idea of absolute title in her, and entirely in harmony with the theory of a life estate. If the testator intended to preserve this estate for the benefit of his heir and next of kin, he might properly impose upon the life tenant the duty of preventing it from sale for taxes, and its protection from destruction by fire, and decay by the ravages of time. But no such obligation could be imposed by a grantor or devisor upon the owner of an estate in fee.

Again, if his widow should marry again, her estate, by the terms of the will, would be cut down to her dower interest, and in that event, clearly, as to the real estate, the testator would die intestate, and must have so intended, as that would be the clear legal effect of the will.

Again, the limitation imposed by the will upon her power of sale of the real estate is not in harmony and cannot be reconciled with the idea of an absolute estate in her in fee simple. She can only sell with the consent of her co-executor. There must be a concurrence and consent by the executors before she can alienate this property. The testator could impose no such restraint upon alienation if she had the title in fee. But he had the power to impose such restrictions upon alienation when the right to sell was derived from the power of sale in the will, and in that case it was clearly in the power of the testator to require a concurrence of both executors, and when such restrictions are imposed in the power of sale, it can only be exercised according to the delegated power. (*Hyatt, Exr.*, v. *Arguero*, 14 N. Y. Civ. Pro. Rep., 286 ; 17 N. Y. State Rep., 746.)

Again, the provisions of the will wherein he says: "I also give her discretionary power to give such sums of money to any, as she may think prudent, of my relatives." If this was an absolute bequest of all of his personal estate to his wife, and so intended and understood by the testator, he would not have attempted to impose a restraint upon her of making his relatives the sole object of her gratuities. The authority to sell the real estate, with the consent of the executors, and to make gifts to his relatives, necessarily exclude, by legal implication, the power to sell

without such consent, or give personal property except to his rela-
tives. The maxim *expressio unius est exclusio alterius* applies to
these provisions. All of these qualifications and exceptions are
consistent with the testator's intent to create a life estate in all of
his property in his widow, and may, within the rules of interpreta-
tion above referred to, operate as qualifications of the language of
the provision first employed in it; but if we give that language the
force of an absolute bequest of the personal and a devise in fee of the
realty, then we must treat these latter provisions as repugnant, and in
violation of the rule we have quoted from *Taggart* v. *Murray*
(*supra*); that in the construction of a will effect is to be given, if
possible, to all its provisions, and no clause is to be rejected  *  *  *
on the ground of repugnancy when it is possible to reconcile the
provisions which are supposed to be in conflict.    We think the
case differs essentially from *Clarke* v. *Leupp* (88 N. Y., 230).   In
that case the will imposed no condition on the devisee and legatee in
the use or disposition of the property to whom she pleased, and
without the consent of any co-executor or any other person.

So, in *Campbell* v. *Beaumont* (91 N.Y., 467), the court held that
the devise and bequests were absolute to the wife without any words
of qualification, and that the bequest that the remainder should be pre-
served for his step-son did not divest the widow of her absolute estate.

But the will contained no such restraints and qualifications as are
found in the will under consideration, and the case is, therefore,
distinguishable from this. So, in *Lawrence* v. *Cooke* (104 N. Y., 636),
the will contained an absolute and unconditional devise under
which the title passed to the devisee without any charge upon it
except in the discretion of the devisee, but contained no condition
by which the estate of the devisee could be lessened or impaired,
and no restraint on the alienation of the same by the devisee, and
seems, therefore, to be clearly distinguishable from the case at bar.
Nor do I find any case cited by the learned counsel for the
respondent upon this point which is not distinguishable upon
principle from the one under consideration.

The case of *Van Horne, Executor*, v. *Campbell* (100 N. Y., 287),
holds that an absolute power of disposition annexed to a primary
devise in fee is deemed conclusive of the existence in the devisee
of an absolute estate. But we have seen that the will under con-

sideration in this case does not give the devisee an absolute power of disposition. The right to dispose of this real estate depends upon the volition of the two executors, and is not an absolute power in the devisee or in her as executrix without the concurrence of her co-executor. Nor has she the power of absolute disposition of the personal property. The will confines her in the disposition of it to the relatives of the testator.

And the rule is the same as to the bequests of personal property as it is to devises of real estate. ( *Van Horne* v. *Campbell, supra.*) In the case last cited the authorities are examined at great length, and the distinction carefully noted between an absolute devise or bequest, when the first taker acquires, under the will, an absolute estate not capable of being defeated by an executory devise over which is repugnant to the first devise, and the cases where such subsequent provision qualifies, limits or controls the first provisions; and the rule seems settled that when the will gives the devisee or legatee unrestrained power of disposition, the title is absolute, but when there is a restriction upon the power of alienation or disposition the title is qualified and may be bound or controlled by the subsequent provisions of the will. Applying that rule to the will under consideration, and looking, as we may, at the circumstances and surroundings of the testator, the amount of the annual income of the estate, the age of the respondent, and the children and grandchildren of the testator, all of which circumstances and surroundings may be taken into consideration as circumstances reflecting some light upon the question of the intention of the testator in making this will, we are inclined to the opinion that the respondent took under this will only a life estate, with a qualified power of sale of the real estate and a limited right of disposition of the personal property, or a portion of the same, in accordance with the provisions of the will.

The decree of the surrogate must, therefore, be reversed, and the case remitted to the surrogate to make a decree in accordance with the provisions of the will as determined on this appeal, with costs to the appellants out of the estate.

PUTNAM, J., concurred; HERRICK, J., not voting.

Decree of the surrogate reversed, case remitted to surrogate to make a decree in accordance with the provisions of the will as determined by the opinion.